Cody Ladewig, by his Guardian ad Litem,
Alan E. Grischke, Larry Ladewig and Rhonda
Ladewig, Plaintiffs-Appellants,†

v.

John E. Tremmel, Larry Winters, Janice Winters
and Auto-Owners Insurance Company,
Defendants-Respondents,

Misty A. Franck, Defendant,

Badgercare Plus Managed Care Program,
Subrogated Defendant-Respondent.

Court of Appeals

*No. 2010AP1925. Submitted on briefs March 7, 2011.
—Decided June 16, 2011.*

2011 WI App 111

(Also reported in 802 N.W.2d 511.)

† Petition for Review denied 12/13/11.

216

218

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Alan E. Grischke* of *Grischke Law, LLSC*, Wausau.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John R. Shull, Jr.*, of *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Wausau.

Before Lundsten, Higginbotham and Blanchard, JJ.

¶ 1. BLANCHARD, J.   This is a negligence action arising from dog-bite injuries to a child. A guardian ad litem and parents of the victim (collectively, the Ladewigs) brought the action against parties who include landlords Larry and Janice Winters. The dog was owned by two tenants of the landlords, and the attack occurred on property that the landlords leased to these tenants. The Ladewigs now appeal from dismissal of the action against the landlords on summary judgment.

¶ 2.   The Ladewigs acknowledge the general liability rule in Wisconsin that, as a matter of public policy under *Smaxwell v. Bayard*, 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923, a landlord is not liable in negligence for injuries caused by a tenant's dog, unless the landlord is an owner or keeper of that dog. However, the Ladewigs contend that an exception to this rule against liability applies here, based on the RESTATEMENT (SECOND) OF TORTS § 324A (1965). Section 324A creates liability in certain circumstances for an individual who assumes a duty by voluntarily undertaking to render services to another, when the first individual should recognize that his or her volunteered services are necessary for the protection of third parties. The Ladewigs contend that

219

the landlords voluntarily assumed such a duty to third parties, including the Ladewigs, by using a lease provision that prohibited the tenants from keeping "vicious" dogs on the leased property. On this basis, the Ladewigs argue that because the landlords assumed a duty to enforce the lease provision, which they breached in failing to enforce it against the tenants, § 324A creates liability that is not precluded under the public policy rule of *Smaxwell*.

¶ 3.  On the undisputed facts, we conclude that, even assuming without deciding that RESTATEMENT (SECOND) OF TORTS § 324A could create liability for landlords who use such a lease provision, *Smaxwell* applies to preclude liability on public policy grounds. That is, under the reasoning of *Smaxwell*, the landlords' ability to enforce the lease provision does not qualify them as owners or keepers of the pit bull at issue, and therefore they cannot be liable as a matter of public policy. Accordingly, we affirm the circuit court's summary judgment based on its conclusion to the same effect.

## BACKGROUND

¶ 4.  The relevant facts are not in dispute, and may be summarized briefly. Two tenants rented a single-family home from the Winters. The tenants invited their seven-year-old neighbor over to this property. While playing at their home, the child was attacked by a pit bull owned by the tenants, and sustained serious injuries.

¶ 5.  The Ladewigs sued parties that included the landlords for injuries to the child. The Ladewigs allege that the landlords were negligent because they failed to exercise reasonable care in enforcing a lease provision

220

against the tenants that prohibited the tenants from keeping vicious dogs, defined to include all pit bulls, on the leased property.[1]

¶ 6. The landlords moved for summary judgment, arguing that they could not be held responsible for the acts of their tenants' dog, despite the "no vicious dogs" provision, because they were not owners or keepers of the pit bull kept by their tenants. The court granted the

---

[1] The lease provision at issue is contained in a "Rules and Regulations" document appended to and incorporated by reference into the residential rental contract, and states:

> 30. Pet clause—any pet clause negotiated will exclude cats that have not been de-clawed and neutered and any vicious dog which has a history of biting or aggressive tendencies such as Akitas, *Pit Bulls,* Chows, Rottweilers, Dobermans, German Shepherds, Malamutes, Huskies, Wolf Hybrids, and Mastiff breeds. If pets are allowed, additional security and or rent is required and tenant agrees to have the carpets professionally cleaned and pet treated when vacating.

(Emphasis added.)

The phrase "any pet clause negotiated" refers to a separate section of the residential rental contract that addresses pets. In this separate section, the parties agreed that the tenants would be allowed to keep one dog, which is not a pit bull or any of the other listed allegedly "vicious" breeds ("1 St. Bernard outside dog").

We observe that this lease provision appears to be ambiguous regarding prohibited dog ownership. Under a broad reading, it bans tenants from keeping any dogs on leased properties that fall into either or both of two categories: (1) specific dogs, regardless of breed, reasonably believed to be vicious because of the dogs' individual histories of biting or aggressive tendencies, and (2) all dogs belonging to a "vicious breed," including but perhaps not limited to ("such as") one of the ten identified breeds. Under a narrow reading, it bans only those dogs belonging to one of the ten identified breeds. However, neither of the parties addresses

motion on that ground. The Ladewigs appeal the order granting summary judgment against them.

## DISCUSSION

¶ 7.   We review a grant of summary judgment de novo, employing the same methodology as the circuit court, and benefiting from the court's analysis. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). When, as here, there are no genuine issues of material fact, the question is which party is entitled to judgment as a matter of law.[2] Wis. Stat. § 802.08(2) (2009–10).[3]

¶ 8.   The legal issue presented is whether the rule set forth in *Smaxwell,* explaining public policies precluding landlord liability, does not apply when a landlord allegedly fails to enforce a lease provision that prohibits a tenant from keeping vicious dogs.

¶ 9.   In order to establish a negligence claim, the Ladewigs must first prove that the facts meet the four elements of negligence. *Smaxwell,* 274 Wis. 2d 278, ¶ 32. Second, even if the Ladewigs establish each of these elements of a negligence claim, liability for the negligence may be precluded as a matter of public policy. *Id.,* ¶ 39.

---

this apparent ambiguity, and our determination regarding the legal issue raised on appeal is the same regardless of how broadly or narrowly the provision is read.

[2] As discussed in more detail in the text in ¶¶ 34–35 *infra,* the Ladewigs assert that there are disputed issues of material fact, but we conclude that these disputed facts are not material under the legal standards that are dispositive in light of the teaching of *Smaxwell v. Bayard,* 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923.

[3] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 10.   Both parts of the analysis present questions of law that we review de novo. *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 15, 251 Wis. 2d 171, 641 N.W.2d 158 (determination of the existence of a duty in negligence case presents question of law); *Smaxwell*, 274 Wis. 2d 278, ¶ 40 (whether public policy precludes negligence liability is a question of law).

¶ 11.   The four elements of negligence, as applied here, are:   (1) the existence of a duty of care on the part of the landlords; (2) a breach of that duty of care; (3) a causal connection between the landlords' breach of duty of care and the injury; and (4) actual loss or damage resulting from the injury. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906. With regard to the elements, the Ladewigs focus on the first, the existence of a duty. The general duty rule in Wisconsin is that " 'all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others.' " *Smaxwell*, 274 Wis. 2d 278, ¶ 45 (citation omitted). Given this very broad duty of reasonable care, "the decision to preclude liability should normally be based on public policy, rather than the notion of duty." *Id.*

¶ 12.   This leads us to the second analysis, involving public policy. "[E]ven if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors." *Id.*, ¶ 39.[4] Public policy analysis is separate from deter-

---

[4] Liability may be denied on the basis of one or more of the following factors:

mining whether a duty exists. *Id.*, ¶ 40. Before determining whether public policy considerations preclude liability, it is usually the better practice to submit the case to the jury for development of the record. *Id.*, ¶ 41. However, "when the facts are not complex and the relevant public policy questions have been fully presented, this court may determine whether public policy precludes liability before trial." *Cefalu v. Continental Western Ins. Co.*, 2005 WI App 187, ¶ 9, 285 Wis. 2d 766, 703 N.W.2d 743 (citing *Gritzner*, 235 Wis. 2d 781, ¶ 26). As discussed below, we believe this is such a case.

¶ 13.  With that background, we summarize the public policy rule against landlord liability in this context, as described in cases decided beginning in 1975, and then turn to the exceptional circumstances that the Ladewigs assert cause this action to be one that is not barred by the public policy rule of *Smaxwell*.

### Common-law Liability of Landlords for Negligence Associated with Injuries Caused by a Tenant's Dog

¶ 14.  The general rule prohibits landlord liability on public policy grounds. The Wisconsin cases that have examined the potential common-law liability of a land-

---

(1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place *too* unreasonable a burden upon the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point.

*Smaxwell*, 274 Wis. 2d 278, ¶ 40 (quoting *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 43, 251 Wis. 2d 171, 641 N.W.2d 158).

lord for injuries that a tenant's dog causes to a third party have consistently held that a landlord, as landlord, cannot be held liable for injuries caused by a tenant's dog. It is only when a landlord acts or fails to act while in the separate status of an owner or keeper of a tenant's dog that liability may arise.

¶ 15. In the first of the leading cases we rely on, the supreme court applied this rule[5] to preclude liability of an owner-resident landlord who allegedly was aware that the tenant in the duplex unit adjoining his unit had a vicious dog. *Gonzales v. Wilkinson*, 68 Wis. 2d 154, 227 N.W.2d 907 (1975). The supreme court concluded that the complaint against the owner-resident of the duplex was not sufficient to state a cause of action in common-law negligence, because there was no allegation that the owner-resident was either an owner or keeper of the dog or had any control or dominion over the dog. *Id.* at 158. The court held that it did not matter that the owner-resident allegedly was aware that the tenant-neighbor was keeping the dog on premises owned by and ultimately controlled by the owner-resident, because the law does not require a landlord to fill the role of an insurer for the acts of a tenant. *Id.*

---

[5] The court in *Gonzales v. Wilkinson*, 68 Wis. 2d 154, 158, 227 N.W.2d 907 (1975), actually used "duty" language, holding that the landlord's "ownership and control of the premises created no *duty* on the part of the" landlord. *Id.* (emphasis added). However, the court in *Smaxwell* explained that, while the court in *Gonzales* had spoken in terms of duty, *Gonzales* should be read as representing "a *policy* decision that only those who have dominion or exercise control over an animal should be liable for" injuries it causes. *Smaxwell*, 274 Wis. 2d 278, ¶ 46 (emphasis added). Therefore, we treat *Gonzales* as a public policy case in line with the teaching of *Smaxwell* discussed in more detail below.

¶ 16. An opinion of this court, subsequent to and citing *Gonzales* as authority, comes closer to the facts of this case, in that it involved an allegation of negligence premised in part on a landlord's failure to enforce a general "no pets" lease provision. *Malone v. Fons*, 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998). While we did not focus in isolation on the implications of the "no pets" lease provision,[6] and we apparently were not presented with any argument based on the RESTATEMENT (SECOND) OF TORTS § 324A, we concluded that the landlord could not be held liable using reasoning relevant to this appeal. The dog-bite victim asserted that the landlord was liable in negligence for injuries caused by a tenant's dog, because the landlord failed to enforce the "no pets" provision, knew of the dog's existence, and had been notified of the dog's previous "mischievous behavior." *Id.* at 752. We focused on, and rejected, the victim's assertion that the landlord's alleged knowledge that the tenant had a dog with a history of bad behavior was sufficient to create liability. *Id.* at 754–55. We concluded that the landlord was not liable, because (1) there was no allegation that the landlord was an owner or keeper of the dog, and (2) the landlord's ownership and control of the premises created no duty on the part of the landlord to the victim, regardless of the allegations of the landlord's prior knowledge of the dog's dangerousness. *Id.* at 752, 757.

---

[6] The majority in *Malone v. Fons*, 217 Wis. 2d 746, 755 n.1, 580 N.W.2d 697 (Ct. App. 1998), suggested that the existence of a lease provision prohibiting pets would have been irrelevant to the negligence analysis under the *Gonzales* holding. However, this observation was made in a footnote responding to a contention made by a dissenting judge, and the majority did not go beyond this point.

¶ 17. Consistent with, but expanding on, its prior holding in *Gonzales* and our discussion in *Malone*, the supreme court in *Smaxwell* explicitly applied public policy factors to preclude liability for a landlord alleged to have been negligent in allowing known dangerous dogs to run at large on property leased to a tenant. *See Smaxwell*, 274 Wis. 2d 278, ¶¶ 13, 54. The court made clear that it was not resting its holding on a definition of "duty," but instead affirmed the rule of *Gonzales* in broad public policy terms. The rule is that liability for landowners or landlords under the common law is limited to "those who have dominion or exercise control over an animal." *Smaxwell*, 274 Wis. 2d 278, ¶ 46 (citing *Gonzales* and *Malone* as representing implicit policy determinations to the same effect).

¶ 18. The court in *Smaxwell* cited several reasons for its conclusion that allowing recovery against landlords who do not have control over or custody of dogs that cause injury to someone on or around their property would violate the sixth public policy factor, which bars recovery where there is "no sensible or just stopping point." *Smaxwell*, 274 Wis. 2d 278, ¶ 47.

¶ 19. One consideration was the court's view that permitting liability would present fact finders in some cases with the overly complex task of determining the level of awareness that landlords had, or should have had, regarding the hazards represented by their tenants' dogs, perhaps leading to reliance on legal fictions. An injured plaintiff "could always make the argument that a landlord should have known of the presence of the tenant's dog or should have known of its dangerous propensities." *Id.*, ¶ 52. This would lead to "[c]harging these landlords with constructive knowledge of the propensities and behavioral history of each tenant's dog." *Id.* An additional concern was that plaintiffs

would spend private and public resources in pursuing cases against landlords, who are on average more wealthy than tenants, on dubious theories of liability instead of pursuing tenant dog owners, who are on average less wealthy, but who have the best opportunity to prevent injuries. The "sound policy," the court concluded, is one "ensuring that liability is placed upon the person with whom it belongs rather than promoting the practice of seeking out the defendant with the most affluence." *Id.*, ¶ 53. The supreme court also expressed fear that landlord liability in this context would have "drastic results," such as encouraging landlords to preclude all of their renters from having dogs for fear of liability. *Id.*, ¶ 52.

¶ 20. Accordingly, the *Smaxwell* court announced a determination of public policy that, because "only those who have dominion or exercise control over an animal should be liable for its injuries," *id.*, ¶ 46, "common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury." *Id.*, ¶ 39. The *Smaxwell* court also noted that its policy decision is consistent with the legislative policy underlying the dog-bite statute, WIS. STAT. § 174.02, which holds only owners, keepers, and harborers of dogs strictly liable for the acts of dogs. *Smaxwell*, 274 Wis. 2d 278, ¶ 51.[7]

---

[7] WISCONSIN STAT. § 174.02 is not directly applicable to this case, because the Ladewigs allege common-law negligence, not strict liability under the statute. *See Pawlowski v. American Family Mut. Ins. Co.*, 2009 WI 105, ¶ 52, 322 Wis. 2d 21, 777 N.W.2d 67 (distinguishing between negligence cases and strict liability cases under WIS. STAT. § 174.02).

¶ 21. With that background regarding the general rule against liability, we turn to the RESTATEMENT (SECOND) OF TORTS § 324A. The Ladewigs assert that § 324A creates liability and that this liability is not precluded under the public policy rule of *Smaxwell,* because the landlords here voluntarily assumed a duty to enforce a "no vicious dogs" provision in a lease to protect third parties.

## RESTATEMENT (SECOND) OF TORTS § 324A

¶ 22. The RESTATEMENT (SECOND) OF TORTS § 324A imposes liability on persons for their negligent performance in specified types of undertakings. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] [8] his undertaking if[:]
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

---

[8] The word used is "protect," but "use of the word 'protect' in the introductory portion [of the RESTATEMENT (SECOND) OF TORTS § 324A] apparently was a typographical error published in the Restatement and should be read 'perform.'" *Miller v. Bristol-Myers Co.,* 168 Wis. 2d 863, 882 n.7, 485 N.W.2d 31 (1992).

■■

¶ 23.   The Ladewigs are correct in asserting that the supreme court has concluded that the RESTATEMENT (SECOND) OF TORTS § 324A is one potential framework for analyzing negligence liability. *See Stephenson,* 251 Wis. 2d 171, ¶ 23 ("As this court has applied it, the framework of § 324A comports with Wisconsin's principles of negligence law."). One " 'may have no duty to perform an act, [but] if he attempts to do something to another even although gratuitously he must exercise reasonable care.' " *Id.* (citation omitted). That is to say, "liability may be imposed on a person who has no duty to act when that person gratuitously undertakes to act, then acts negligently." *Id.* However, as relevant to our discussion below, the supreme court has also precluded liability based on public policy, even when the facts of a case fit within the framework of § 324A. *Id.,* ¶ 25.

### *Smaxwell's* Broad Public Policy Rule Precludes Liability

¶ 24.   We conclude that the Ladewigs' reliance on RESTATEMENT (SECOND) OF TORTS § 324A is unavailing. Even assuming without deciding that the landlords assumed a duty creating liability under § 324A, the public policy analysis of *Smaxwell* applies to preclude liability. That is, even if each element for a claim of negligence under § 324A is proven in this case so as to create liability, liability is precluded by our supreme court's public policy determination that only landlords who are also owners or keepers of a tenant's dog can be held liable for actions of that dog.[9] *See Smaxwell,* 274 Wis. 2d 278, ¶ 39.

---

[9] We use the terms "owner or keeper" as shorthand, as the supreme court also did, to refer to persons who have dominion over, control over, or custody of a dog. *See Smaxwell,* 274 Wis. 2d 278, ¶¶ 46, 47.

¶ 25. If that public policy rule is to be altered, change would have to come from the supreme court, not this court. This is because *Smaxwell* explicitly forecloses landlord liability on a broad basis, regardless of a plaintiff's theory of a landlord's duty of care, unless the landlord has a role, separate from that of landlord, which involves exercising control or custody over the dog so as to qualify as an owner or keeper of the dog. *See id.* The Ladewigs disavow a factual allegation that the landlords here exercised any such control, and instead point exclusively to the lease provision as a basis for liability.

¶ 26. The court in *Smaxwell* determined, in effect, that particular theories purporting to define a landlord's duty of care in this context are irrelevant, given the public policy reasons to bar landlord liability across cases. *See id.* Thus, the court declined even to address the question of whether a dangerous dog may be characterized as a "defect" of rental premises or that the landlord's duty of ordinary care extends beyond defects in or maintenance of the physical premises under *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979). *Smaxwell*, 274 Wis. 2d 278, ¶ 38–39. The *Smaxwell* court explained that there is no need to address theories that could support a finding of negligence, because the court concluded that public policy against liability in this factual context renders such theories irrelevant. *Id.*, ¶ 39.

¶ 27. As mentioned above, development of the record at trial is often advisable before a court applies public policy analysis to preclude liability. *Id.*, ¶ 41. However, we conclude that a trial is not necessary in this case based on the undisputed material facts in this summary judgment record. The Ladewigs' only challenge to the summary judgment is that, as a matter of law, the RESTATEMENT (SECOND) OF TORTS § 324A creates

liability for the landlords and alters the public policy analysis under *Smaxwell*. Summary judgment is proper because the material facts in this case are undisputed and uncomplicated, the parties have had a full opportunity to address the relevant public policy questions, and the supreme court in *Smaxwell* explicitly and unambiguously announced a rule prohibiting landlord liability in this context. In sum, the single issue that we conclude is dispositive is a purely legal one, and we conclude that *Smaxwell* may be readily applied to resolve that issue.

¶ 28. We now turn to the particular arguments made by the Ladewigs. They argue that *Smaxwell* does not prohibit a finding of liability under these circumstances, because unlike in *Smaxwell*, a "no vicious dogs" provision itself provides a sensible and just stopping point to liability: only those landlords who prohibit vicious dogs in leases may be liable. However, the reasoning of the court in *Smaxwell*, consistent with *Gonzales* and *Malone*, is to the contrary. There is nothing about the landlords' alleged non-enforcement of the "no vicious dogs" lease provision that logically transforms the landlords into "owners or keepers" of the dog, which under *Smaxwell* is all that matters.

■

¶ 29. As we have seen, *Smaxwell* dictates that in a negligence action against a landlord involving a dog bite by a dog owned by the landlord's tenant, if the landlord could not be deemed an "owner" or "keeper," then there can be no liability. That is the case here. To be an owner or keeper of a dog, one must have dominion over, control over, or custody of a dog. *See Smaxwell*, 274 Wis. 2d 278, ¶¶ 46, 47. Under the logic of *Gonzales* and *Malone*, the ability of a landlord to enforce a lease provision is a type of control that a landlord exercises

232

over the *premises,* not over a *tenant's dog on the premises. Gonzales* held that ownership and control of the premises did not create a duty on the part of the owner of the premises to third parties for injuries created by a tenant's dog. *Gonzales,* 68 Wis. 2d at 158. *Malone* applied this rule to reject the plaintiffs' argument that the landlord should be held liable for failing to enforce a "no pets rule," because the landlord was not an owner or keeper of the dog. *See Malone,* 217 Wis. 2d at 752–53, 757. Accordingly, we conclude that the landlords here did not gain dominion or control over the tenants' dog by virtue of having included in the lease a provision that prohibited the tenants from keeping dogs believed to be vicious on the leased property. *See id.* at 754–55. Because the landlords are neither owners nor keepers of the dog, they cannot be held liable for the dog's actions under Wisconsin law.

¶ 30. It is true, as the Ladewigs argue, that if their position were adopted then only landlords using such lease provisions would be liable, and this would reduce the number of potential landlord defendants.[10] However, a reduction in the number of potential defendant landlords would not in itself create the "sensible or

---

[10] Indeed, it might be that the number of potential defendants would drop to near zero under this rule of liability. Influenced by the unavailability of affordable insurance, landlords would have a great incentive to exclude all such provisions from leases. This is the type of unintended consequence, or "drastic result," that the court in *Smaxwell* feared could follow from allowing landlord liability for injuries caused by their tenants' dogs. *Smaxwell,* 274 Wis. 2d 278, ¶ 52. Whatever net benefit that society and individuals derive from the use and enforcement of "no vicious dog" provisions—including, presumably, a reduction in the number of vicious dogs owned by tenants—would be effectively lost to the extent that such lease provisions are not used.

233

just stopping point," which the supreme court found lacking whenever landlord liability is available.

¶ 31. The *Smaxwell* court identified multiple negative consequences to any finding of liability for landlords who are not owners or keepers of a dog, all of which are still in play even when a landlord uses a "no vicious dogs" lease provision. As discussed briefly above, one concern involved the difficulty of determining what a landlord precisely knew, before a dog bite, about the propensities and behavioral history of the dog, which is likely only one of the many animals that might be owned by any given tenant of the landlord. *See Smaxwell*, 274 Wis. 2d 278, ¶ 52.[11] The court noted that liability would raise the specter of requiring fact finders to attribute constructive knowledge to landlords on

---

[11] The concern the court expressed in *Smaxwell* about the difficulty of determining what a landlord knew or should have known about the propensities or behavioral history of a tenant's dog is not lessened in a case, such as this one, involving an ambiguous lease provision that references both propensities and breeds of dogs. As we noted in footnote 1, the lease provision in this case is ambiguous in that it could be read to prohibit not only keeping a specific dog known to have vicious tendencies, but also keeping a dog that belongs to an allegedly "vicious breed," or keeping either category of dog. This ambiguity in itself serves to illustrate the concerns of the court in *Smaxwell* regarding the potential complications for landlords, and for fact finders in negligence cases, arising from landlord liability in this context. The difficulty that landlords might have in determining the propensities of specific dogs owned by their tenants, identified as a concern in *Smaxwell*, is similar in kind to the difficulties landlords might have in determining whether a particular breed (or mix of breeds) correlates to aggressive tendencies, or for that matter in determining what breed (or mix of breeds) a particular dog might belong to, since many dogs are of mixed breeds.

these topics. *See id.* A landlord's use of a "no vicious dogs" lease provision narrows the field of potential defendants, but it does not make the fact finder's work easier in the negligence cases that would be filed.

¶ 32. In a related vein, the *Smaxwell* court was concerned that even if a landlord took positive steps to protect third parties, such as warning guests of a known dangerous dog on the property, the landlord could *still* be held liable if the landlord's actions did not satisfy the duty of ordinary care under the circumstances. *See id.,* ¶ 49. The same concern arises with vicious dog clauses such as the one here. How often and how intrusive would property inspections need to be to avoid liability? Would it matter that the landlord managed dozens or hundreds of rental units, rather than a few? *Smaxwell* implies that even conscientious landlords could incur liability.

¶ 33. Additionally, the court noted, allowing recovery against landlords would not place liability where it belongs, because it is the tenant, not the landlord, who has direct control over the dog. *See id.,* ¶ 53. These concerns are not resolved, or even reduced, if liability is limited to those landlords who use "no vicious dog" provisions in leases.

¶ 34. For all of these reasons, the three factual questions that the Ladewigs contend are both disputed and material, and therefore preclude summary judgment, are not material. These issues are: whether the landlords were aware, before the attacks, that the pit bull that caused injury was on their leased property; whether the landlords were aware of other prohibited dogs on other properties that they owned; and whether the purpose of the "no vicious dogs" provision was to benefit the landlords or instead members of the public.

¶ 35. As we have explained, under *Smaxwell*, *Gonzales* (as subsequently interpreted by *Smaxwell* to be a case resting on a public policy determination), and *Malone*, these issues are not material, because they are not relevant to the question of whether the landlords were owners or keepers of the dog at issue.

¶ 36. Our reading of *Smaxwell* as creating a blanket rule against landlord liability is supported by the dissent's reading of the majority opinion, a reading not contested by the majority, *see Smaxwell*, 274 Wis. 2d 278, ¶ 77 (Bradley, J., dissenting), and this court is without authority to modify decisions of the supreme court. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 37. The Ladewigs attempt to distinguish this case from the Wisconsin precedents, most notably *Malone*, on the ground that a "no vicious dogs" lease provision, as used here, represents an obligation that a landlord assumes to protect third parties, not to protect the landlord's own property, whereas a mere "no pets" lease provision, as used in *Malone*, is used only to protect landlord property. This argument rests in part on a decision of the Alaska Supreme Court holding as a matter of policy that lease provisions may create obligations on the part of landlords to prevent specific harms to persons visiting leased premises. *See Alaskan Village, Inc. v. Smalley*, 720 P.2d 945 (Alaska 1986). However, to the extent that the Alaska case represents a policy determination that differs from that expressed in *Smaxwell*, *Gonzales*, and *Malone*, we are bound by Wisconsin precedent.

¶ 38. Briefly comparing the approaches of the Alaska court and our supreme court in *Smaxwell* is instructive. The setting in *Alaskan Village* was a mobile

236

home park, where a child was bitten by her neighbor's pit bull. *Alaskan Village, Inc.*, 720 P.2d at 946–47. The lease agreement prohibited tenants from possessing either a "vicious dog" or more than one dog. *Id.* at 946. The court relied on the RESTATEMENT (SECOND) OF TORTS § 323 (1965) (as opposed to § 324A)[12] and seven analytical factors that are in themselves roughly equivalent to Wisconsin public policy factors, to determine whether an actionable duty of care existed under those facts. *Id.* at 947–48. The court determined that the landlord had a duty to exercise ordinary care in the enforcement of its rules and regulations. *Id.* at 948. As the following passage reflects, the court applied seven policy factors that it deemed relevant:

> (1) There was ample evidence that [the defendant] had actual knowledge of prior incidents involving [the] dogs, and therefore it was clearly foreseeable that a person such as [the victim] might be harmed; (2) [the victim] suffered injury; (3) [the victim's] injuries are closely related to [the defendant's] failure to take any action to enforce its rules; (4) [the defendant's] blatant disregard of its tenants' safety is morally blameworthy; (5) *our policy is to encourage owners to enforce their rules to prevent harm to others lawfully on the premises;* (6) the burden on owners of enforcing their own rules is not onerous; and (7) owners may obtain insurance or require tenants who own vicious animals to do so.

*Id.* at 948 (emphasis added). This analysis views the landlord, at least in the context of preventing injuries caused by tenant-owned dogs, as an enforcer of safety rules, in the form of lease provisions, for the benefit of

---

[12] There are differences between the elements of the RESTATEMENT (SECOND) OF TORTS § 323 and § 324A, but we do not address the differences because they are not relevant to our focus, which is the public policy analysis regarding liability.

all tenants and their visitors. Under this view, the owner of a mobile home park who purports to ban "vicious dogs" or ownership of multiple dogs assumes a duty of care, and the potential liability in negligence, for insuring against and preventing injuries caused by dogs. Thus, the Alaska court sees a landlord who purports to ban dangerous animals by using a lease provision as have taken on the role of "prevent[ing] harm to others lawfully on the premises." *Id.*

¶ 39.  In sharp contrast, the court in *Smaxwell* looks across the varied responsibilities that any given landlord may assume, depending on the nature of the landlord's properties and the scope of the landlord's property holdings, and forecloses liability regardless of the particulars of that landlord's properties. "While it may seem reasonable to impute knowledge of a tenant's vicious dog to a landlord who rents a duplex or a relatively small converted motel, many urban landlords rent multiunit apartment complexes to dozens, if not hundreds, of tenants." *Smaxwell*, 274 Wis. 2d 278, ¶ 52. Thus, under the reasoning of *Smaxwell*, liability does not turn on such considerations as whether mobile home park owners may appear, as the Alaska court viewed it, relatively well positioned and reasonably obligated to "enforce their own rules" to protect residents and visitors to their mobile home parks from vicious dogs. The court in *Smaxwell* concluded that, even if liability might appear appropriate in some cases, policy factors weigh against imposing liability on any landlord who does not exercise direct control over an injury-causing dog.

¶ 40.  It follows, as explained below, that the distinction implied by the Alaska court and explicitly articulated by courts in some other jurisdictions, between "no vicious dogs" clauses and "no pets" clauses is

irrelevant in Wisconsin. The distinction these courts make focuses on a determination of who the lease provisions were allegedly intended primarily to benefit: landlords or third parties. These cases distinguish between: (1) lease provisions that landlords use with the primary intent of benefitting themselves (that is, typically, to protect the condition of their property), and (2) provisions landlords use primarily to benefit third parties.[13] Relying on this distinction regarding the alleged purported beneficiaries of lease provisions, the Ladewigs assert that the vicious dog exclusion here should be seen as "falling outside" the general no-pets provision in *Malone*, because *Malone* involved a lease provision barring *all pets*, which must have been a provision intended to protect the *landlords' property*, and not a specific ban on *vicious dogs*, which must have been intended to protect members of the *general public*.

¶ 41. We disagree that the cases from other jurisdictions are a proper basis on which to distinguish *Malone*. Even assuming, without deciding, that the circuit court in this case could have properly used the summary judgment record to determine who the primary beneficiary of the vicious-dogs provision was, this would be an irrelevant distinction under Wisconsin law,

---

[13] *See, e.g., Amyotte ex. rel. Amyotte v. Rolette Cnty. Hous. Auth.*, 658 N.W.2d 324, 328 (N.D. 2003) (rental lease did not create a duty for the landlord because, among other reasons, there was no evidence that a general "no pets" clause "was intended to benefit third parties from the dangers of an animal attack," unlike the vicious dog clause in *Alaskan Village*); *Braun v. York Properties, Inc.*, 583 N.W.2d 503, 508 (Mich. App. 1998) (landlord did not assume duty to protect others from harm by including restrictions on the sizes of pets in a lease, because landlord—and not any third party—was primary beneficiary of restrictions).

given the no-liability rule of *Smaxwell*. The purported intended beneficiary of the provision is irrelevant because, as discussed above, the lease provision in this case does not give the landlord any amount of control or dominion over the dog, so as to meet the public policy concerns set forth in *Smaxwell*. Thus, for example, this court in *Malone* noted that the facts of *Gonzales* were "strikingly similar" to its facts, supporting its position to place no additional weight on the "no pets" provision referenced in *Malone*. *Malone*, 217 Wis. 2d at 754.

■

¶ 42.   In summary, even assuming, without deciding, that the RESTATEMENT (SECOND) OF TORTS § 324A could create liability for the landlords in this context, the use of the lease provision does not change the public policy determination precluding liability set forth in *Smaxwell*. The public policy concerns identified by the supreme court are not avoided when a landlord uses such a lease provision.

## CONCLUSION

¶ 43.   We conclude that the landlords' ability to enforce the lease provision does not qualify the landlords as owners nor keepers of their tenants' pit bull, and therefore the landlords are not liable as a matter of law for the injuries caused by that dog. Accordingly, we affirm the summary judgment.

*By the Court.*—Order affirmed.