Erin H. PATTERMANN, Plaintiff-Appellant,†

v.

Scott PATTERMANN and IGA Group Employee Benefit Program, Defendants,

Sallie PATTERMANN and State Farm Fire & Casualty Co., Defendants-Respondents.

Court of Appeals

*No. 92–0884. Submitted on briefs October 12, 1992. Oral argument October 12, 1992.—Decided December 8, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

145

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *John P. Richie* of *Misfeldt, Stark, Richie and Wickstrom* of Eau Claire.

On behalf of defendants-respondents, the cause was submitted on the brief of *Thomas J. Graham, Jr.,* of *Carroll, Parroni, Postlewaite, Graham, Pack & Bertling, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Erin Pattermann appeals a judgment dismissing her action against Sallie Pattermann and her insurer, State Farm Fire and Casualty Company, to recover damages for injuries caused by a dog belonging

to Scott Pattermann,[1] Sallie's adult son. Erin argues that the trial court erred by determining that Sallie was not a harborer or keeper of the dog and by excluding relevant evidence of Sallie's beliefs concerning the dog's dangerous propensities. We conclude that the evidence failed to establish that Sallie was a harborer or keeper of the dog. Further, because there was no evidence that the dog *in fact* had previously bitten someone or was of a vicious or mischievous nature, an essential element of a common-law negligence claim, the court properly excluded evidence of Sallie's unsubstantiated belief that the dog was dangerous. We therefore affirm.

The injuries occurred as the Pattermann family assembled at Sallie's home in Eau Claire preparatory to a family reunion at their cabin in Bayfield County. Scott and his family had arrived from Florida with their dog, Mandy, a chow chow. Upon its arrival, Sallie allowed the dog to be placed in the side entryway, the common entry into the home. Shortly thereafter, Erin, the fiancee of another of Sallie's children, arrived. After bending down to pet the dog, Erin began to stand up when Mandy jumped up and bit her in the face.

The complaint alleged a violation of sec. 174.02, Stats., and common-law negligence.[2] After the evidence

---

[1] Scott Pattermann did not answer the complaint, and therefore a default judgment was granted against him on the issue of liability and double damages.

[2] Section 174.02 provides:

Owner's liability for damage caused by dog; penalties; court order to kill a dog. (1) LIABILITY FOR INJURY. (a) *Without notice.* Subject to s. 895.045 [the comparative negligence statute], the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property.

(b) *After notice.* Subject to 895.045 [the comparative negligence statute], the owner of a dog is liable for two times the full amount of

was presented, the court directed a verdict in Sallie's favor. In reviewing a directed verdict for the defense, we examine the evidence most favorable to the plaintiff, and if there is any evidence that will sustain the cause of action, we must reverse. *Low v. Siewert*, 54 Wis. 2d 251, 252–53, 195 N.W.2d 451, 452–53 (1972).

## STRICT LIABILITY

Section 174.02, Stats., in its current form, imposes strict liability subject only to the application of comparative negligence.[3] *See Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 808, 416 N.W.2d 906, 908 (Ct. App. 1987). The statute provides that the *owner* of a dog is liable for the full amount of damages caused by the dog, and double damages where the owner knew of a prior injury. "Owner" is defined as "any person who owns, harbors or "keeps a dog." Section 174.001(5), Stats.

Erin argues that Sallie is strictly liable under sec. 174.02, Stats., because she was the keeper or harborer of the dog.[4] Construction of a statute and its application to

---

damages caused by the dog injuring or causing injury to a person, livestock or property if the owner was notified or knew that the dog previously injured or caused injury to a person, livestock or property.

[3] Section 174.02 has been subject to frequent changes since its enactment. For a discussion of its legislative history, see *Meunier v. Ogurek*, 140 Wis. 2d 782, 787 n.4, 412 N.W.2d 155, 157 n.4 (Ct. App. 1987).

[4] Courts usually distinguish keeping from harboring. Courts generally define "keeping" as exercising some measure of care, custody or control over the dog, while "harboring" is often defined as sheltering or giving refuge to a dog. Thus, "harboring" apparently lacks the proprietary aspect of keeping. John P. Ludington, Annotation, *Who "Harbors" or "Keeps" Dog Under*

a set of facts present a question of law that we review de novo. *Wilson v. Waukesha County*, 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct. App. 1990). Section 174.02 is in derogation of the common-law and is to be strictly construed. *Nelson v. Hansen*, 10 Wis. 2d 107, 119, 102 N.W.2d 251, 258 (1960).

Erin contends that Sallie was the keeper of the dog because she allowed it into her home and asserted control by directing where it was to be placed. We disagree. Our supreme court has defined "keeper" as one who keeps, watches or has custody. *Janssen v. Voss*, 189 Wis. 222, 224, 207 N.W. 279, 280 (1926). However, the casual presence of a dog on someone's premises does not make that person an owner or a keeper. *Hagenau*, 182 Wis. at 547, 195 N.W. at 719. In *Koetting v. Conroy*, 223 Wis. 550, 552, 270 N.W. 625, 626 (1937), a father was held to be the keeper of the dog, when the dog lived in his house and was fed from his table.

Here, Mandy was temporarily in Sallie's home with Scott's family for about a half-hour before the accident occurred. The dog did not live there, and there is no evidence that Sallie fed or cared for the dog in any way. Merely directing where the dog was to be placed for such a short time does not establish the custodial relationship necessary for a keeper.

---

*Animal Liability Statute*, 64 A.L.R.4th 963, 969 (1988). However, early Wisconsin cases appear to use these terms interchangeably. *See, e.g., Hagenau v. Millard*, 182 Wis. 544, 547, 195 N.W. 718, 719 (1924). Nonetheless, because "harborer" and "keeper" do appear distinguishable and statutes should be construed in a manner that avoids making words superfluous, we will consider each term separately. *See Green Bay Broadcasting v. Redevelopment Auth.*, 116 Wis. 2d 1, 19, 342 N.W.2d 27, 35 (1983).

Next, Erin maintains that Sallie harbored the dog because she allowed the dog into her home. The word "harbor" by its meaning signifies protection. *Hagenau,* 182 Wis. at 547, 195 N.W. at 719. "Harboring a dog" means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog. *See Gilbert v. Christiansen,* 259 N.W.2d 896, 897 (Minn. 1977). Strict construction of the word "harbor" suggests that Mandy's transient invasion of Sallie's home while the family finished preparations for their trip is insufficient to trigger the statute.

## COMMON-LAW NEGLIGENCE

Erin also sought a verdict declaring Sallie negligent at common-law. Her claim is presumably grounded upon a corollary to the principle that in many situations the hypothetical reasonable person is expected to anticipate and guard against the conduct of others. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 33 at 197–203 (5th ed. 1984). Thus, anyone with normal experience is required to have knowledge of the traits and habits of common animals. *Id.* at 197–98. Even if Sallie were not the owner or keeper of the animal, as the landowner she may be liable for negligence associated with a known dangerous dog allowed on her premises. *See, e.g., Klimek v. Drzewiecki,* 352 N.W.2d 361 (Mich. App. Ct. 1984). Erin produced no evidence at all that chows are a dangerous breed of dog or that Mandy had previously bitten someone.[5] While Erin tried

---

[5] Erin's theory assumes it is sufficient to prove either generally that the chow as a breed is dangerous or that the particular

unsuccessfully to introduce evidence of Sallie's state of mind concerning these issues, the absence of evidence of the fact of the dog's dangerousness rendered Sallie's beliefs irrelevant. In other words, a defendant's mere belief that a dangerous condition exists is insufficient upon which to base a claim for negligently allowing a dangerous condition to persist without proof that the condition is in fact dangerous.

Nor does it suffice to characterize Erin's proffered evidence that Sally was of the opinion that chows, as a breed, were dangerous dogs. The admission of opinion evidence pursuant to sec. 907.01, Stats., lies within the sound discretion of the trial court. *State v. Dishman*, 104 Wis. 2d 169, 173, 311 N.W.2d 217, 219 (Ct. App. 1981). The trial court may consider the witness' expertise gained from practical experience even though the opinion is not based upon technical or academic knowledge. *Black v. General Electric Co.*, 89 Wis. 2d 195, 212, 278 N.W.2d 224, 231 (Ct. App. 1979). Sallie's only familiarity with chows was that her neighbor had them and that she "knew" them to be an unpredictable breed. The trial court was entitled to conclude that this was an insufficient foundation to justify admitting this lay opinion to prove the fact that chows are a dangerous breed.

Erin also sought to introduce testimony that Scott, prior to the attack, had stated in Sallie's presence that the dog had bitten someone. Erin argues that this testimony was admissible because it is an admission by a party opponent. *See* sec. 908.01(4)(b), Stats. However, Scott, a co-defendant, allegedly made the remark, not

dog had evinced a vicious propensity. Because we conclude that she has proven neither, we will assume without deciding that Erin correctly states the law.

Sallie. It is a general rule that the admissions of one co-plaintiff or co-defendant are not receivable against another, merely by virtue of his position as a co-party in the litigation. 4 WIGMORE ON EVIDENCE 1076 at 156 (Chadbourn rev. ed. 1972). Therefore, the statement is not admissible to prove a prior dog bite.

Erin argues that even if the statement is not admissible to prove a prior dog bite, it is admissible not for the truth of the matter, but to show that Sallie had heard of a prior dog bite. As is true of the claim based upon the nature of the breed, Sallie's mere state of mind regarding a prior bite is not a substitute to prove the fact.

*By the Court.*—Judgment affirmed.