Julie A. Augsburger, Plaintiff-Respondent,

v.

Homestead Mutual Insurance Company and George Kontos, Defendants-Appellants,†

ABC Insurance Company, Janet C. Veith, Edward Veith and Convergys Corporation, Defendants.

Court of Appeals

*No. 2012AP641. Submitted on briefs February 21, 2013. —Decided August 28, 2013.*

2013 WI App 106

(Also reported in 838 N.W.2d 88.)

† Petition for Review Filed.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Robert N. Duimstra* and *Jarrod J. Papendorf* of *Menn Law Firm, Ltd.*, Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph M. Troy* and *Rhonda L. Lanford* of *Habush, Habush & Rottier S.C.*, Appleton.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. GUNDRUM, J. Under WIS. STAT. § 174.02 (2011–12),[1] an "owner" of a dog is subject to strict liability for injuries caused by the dog. An "owner" is

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

"any person who owns, harbors or keeps a dog." WIS. STAT. § 174.001(5). George Kontos permitted his adult daughter, her family, and their dogs to reside in a home he owned but in which he himself did not reside. Julie Augsburger alleges the dogs attacked and injured her when she visited Kontos's daughter at that home. In this case, we are asked to decide if, under these circumstances, Kontos was a harborer of the dogs, and therefore a statutory owner of them, subjecting him to strict liability for Augsburger's injuries. We also address the additional contention of Kontos and his home insurer, Homestead Mutual Insurance Company,[2] that public policy should bar recovery against Kontos. We conclude that Kontos was a harborer, and therefore a statutory owner, of the dogs and that public policy does not preclude his liability. We affirm.

## BACKGROUND

¶ 2. The relevant facts of record are undisputed. Kontos purchased a home in Larsen, Wisconsin, for the dual purpose of residing there upon retirement and providing a place for his daughter Janet Veith, her husband Ed Veith, and their daughter Jordan to live that was nearer to Kontos and his wife, Janet's mother, because the mother was ill. The Veiths were not expected to, and in fact did not, pay any rent. Kontos himself did not live on the Larsen property, but resided in another home several miles away. He did, however, visit the Veiths at the property on multiple occasions.

¶ 3. Kontos was aware the Veiths had two dogs when they moved into the property in February 2007,

---

[2] We use "Kontos" to refer both individually to George Kontos and collectively to him and his insurer.

and he permitted these and additional dogs they acquired a few months later to be kept on the property. At the time of the alleged attack on Augsburger, Kontos knew there were at least five dogs living on the property,[3] and he had previously spent time there interacting with them. According to her deposition testimony, on at least one occasion prior to the alleged attack, Augsburger had been at the property when she observed Kontos discipline the dogs when they were playing "very roughly." Kontos admitted in his deposition that he could have told the Veiths they could not keep the dogs at the property, and Janet and Ed acknowledged in their depositions that Kontos could have removed their family and the dogs from the property.

¶ 4. On June 21, 2008, Augsburger went to the property to visit Janet, whom she had known for many years. When Augsburger arrived, Jordan informed her that Janet was in the barn and assisted her in opening the gate to a fenced area leading to the barn. In her deposition testimony, Augsburger stated that when she entered the fenced area there were no dogs present; however, when she walked through the backyard toward the barn, several of the dogs attacked her, leading to her claim of injury.

¶ 5. Augsburger filed suit against Kontos,[4] and both parties moved for summary judgment on the issue before us. The circuit court granted Augsburger's motion and denied Kontos's motion. Kontos sought interlocutory appeal, which we granted. *See* Wis. Stat. Rule § 809.50(3). Additional facts are set forth below.

---

[3] In their answers to interrogatories, the Veiths acknowledged that there were actually six dogs residing at the property at the time of the alleged attack.

[4] Augsburger also filed suit against the Veiths.

490

## DISCUSSION

¶ 6. We review summary judgment decisions using the same standards and method as the circuit court. *Pawlowski v. American Family Mut. Ins. Co.*, 2009 WI 105, ¶ 15, 322 Wis. 2d 21, 777 N.W.2d 67. Under Wis. Stat. § 802.08(2), summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Pawlowski*, 322 Wis. 2d 21, ¶ 15. Application of a statute to undisputed facts is an issue of law we decide independently of the circuit court. *Id.*, ¶ 16.

*Wis. Stat. § 174.02.*

¶ 7. As stated, Wis. Stat. § 174.02 subjects an "owner" of a dog to strict liability for injuries it causes. *See Pawlowski*, 322 Wis. 2d 21, ¶ 17. The legislature has broadly defined "owner" to mean "any person who owns, harbors or keeps a dog." Wis. Stat. § 174.001(5). There is no dispute in this case that Kontos did not "own" or "keep" the dogs that allegedly injured Augsburger. Rather, the dispute revolves around whether Kontos was nonetheless a statutory "owner" of the dogs by virtue of "harbor[ing]" them at the time of the alleged attack.

¶ 8. In his brief-in-chief, Kontos contends he was not an owner under Wis. Stat. § 174.02 because he did not exercise custody or control over or care for the dogs. In his reply brief, he adjusts his argument, still propounding his original contention, but further asserting that he did not harbor the dogs because he personally did not reside in the home in which they resided. These related approaches both fail.

491

¶ 9. Although the legislature has not defined "harbor" or "keep," our supreme court clarified these terms in its *Pawlowski* decision. In that case, a homeowner permitted an acquaintance of her daughter to live at her home with his two dogs. *Pawlowski*, 322 Wis. 2d 21, ¶ 9. One day, after having resided there for several months, the acquaintance opened the door to the home and his unleashed dogs bolted from it, with one of them attacking the plaintiff who was walking nearby. *Id.*, ¶¶ 9, 11, 13. The plaintiff filed suit against the homeowner, and the question before the court was whether the homeowner had been a "harbor[er]" or "keep[er]" of the offending dog at the time of the attack, and therefore an "owner" of it under WIS. STAT. § 174.02. *Pawlowski*, 322 Wis. 2d 21, ¶¶ 1, 3. Similar to Kontos in this case, the homeowner in *Pawlowski* argued that she was not a statutory owner because she did not have dominion or control over the dog when the attack occurred. *Id.*, ¶ 37.

¶ 10. The unanimous *Pawlowski* court recognized that, while the concepts of "harboring" and "keeping" have meanings which appear to overlap each other, they are distinct terms. *Id.*, ¶ 21. Gaining guidance from one of our earlier decisions, the *Pawlowski* court observed that "keeping" generally requires "exercising some measure of care, custody or control over the dog," while "harboring" "means to afford lodging, to shelter or to give refuge to a dog" and "apparently lacks the proprietary aspect of keeping." *Id.*, ¶¶ 26, 27 (quoting *Pattermann v. Pattermann*, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992)).

¶ 11. Using this definition of "harboring," the *Pawlowski* court held that the homeowner had been a harborer of the dog at the time of the attack and was therefore subject to strict liability, because "[s]he al-

lowed the dog to live in her home for several months, affording the dog shelter and lodging." *Id.*, ¶ 29. The court added that "[w]hen a homeowner has become a statutory owner by virtue of the dog's living in her residence for several months, that status does not vary on a minute-to-minute basis, depending on which person happens to open the door to let the dog run free." *Id.*, ¶ 50.

¶ 12. Considering the *Pawlowski* definitions of "harboring" and "keeping" and the supreme court's holding in that case, Kontos's argument that he did not exercise custody or control over or care for the dogs at issue misses the mark. Augsburger does not assert that Kontos was a *keeper* of the dogs at the time of the alleged attack; she claims he harbored them. Like the homeowner in *Pawlowski*, Kontos afforded the Veiths' dogs shelter and lodging for many months, some for more than a year, before the incident, and thus he harbored them. Further, his status as a harborer is not undermined by the fact he was not *also* a keeper exercising custody or control over the dogs.

¶ 13. Kontos contends in his reply brief that because he personally resided in a different home from the dogs, this case is substantively distinguishable from *Pawlowski*. We disagree. In both cases, the owner of the homes knowingly afforded lodging and shelter to the dogs, the relevant consideration in deciding a question of "harboring." The fact that Kontos resided in a separate home from the dogs, and therefore was not in a convenient position to and in fact did not exercise custody or control over or care for the dogs, would be most relevant if the issue was whether Kontos was a "keeper." Indeed, had the legislature limited the statutory definition of "owner" to only owners and keepers of dogs, we would have no difficulty holding for Kontos.

493

But the legislature did not so limit the statute. In choosing to include "harbor[ers]" in the definition of owners, the legislature broadened the pool of potentially liable persons beyond just those who own or keep offending dogs. And in the two decades since we first defined "harbor" to mean "to afford lodging, to shelter or to give refuge," *Pattermann*, 173 Wis. 2d at 151, the legislature has not chosen to remove "harbor" from the statutory definition of "owner," nor has it chosen to define "harbor" differently. *See Fandrey ex rel. Connell v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 26, 272 Wis. 2d 46, 680 N.W.2d 345 ("Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act. The legislature is presumed to know that in [the] absence of its changing the law, the construction put upon it by the courts will remain un-changed[.] Thus, legislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions." (citations omitted)). While one may question the legislative policy behind defining "owner" to include a person who merely harbors a dog or the manner in which case law has defined "harbor," we are bound by both. *See State ex rel. Garibay v. Circuit Court for Kenosha Cnty.*, 2002 WI App 164, ¶ 11, 256 Wis. 2d 438, 647 N.W.2d 455; *Cook v. Cook*, 208 Wis. 2d 166, 186, 560 N.W.2d 246 (1997).

¶ 14. There is no dispute Kontos owned the home where the dogs resided and the alleged attack occurred and permitted his daughter and her family to live there with their dogs. As his daughter Janet stated in her deposition, "It's his house. We live there." At the time of the alleged attack, Kontos had knowingly permitted the dogs to reside at the property for many months. Accord-

ing to the undisputed deposition testimony, Kontos had the authority to remove the Veiths and/or their dogs from the property. Because Kontos unquestionably provided shelter and lodging for the dogs just as surely as he did for the Veiths, he harbored the dogs and was a statutory owner of them.

¶ 15. Our conclusion is in accord with a recent decision from our neighbor to the west. In *Anderson v. Christopherson*, 816 N.W.2d 626 (Minn. 2012), the Minnesota Supreme Court concluded that liability as a harborer of an offending dog was not precluded by the fact the defendant who owned the home where the dog was receiving shelter and lodging did not actually reside at that same location. The defendant in *Anderson* owned a home in Minnesota, but both he and his son resided in South Dakota. *Id.* at 629. With the defendant's permission, the son visited and was staying at the Minnesota home with his dog. *Id.* The defendant had only met the dog once and he established rules and regulations governing the dog's stay at the property. *Id.* at 629, 633. During the stay, the dog ran out of the house and attacked a dog the plaintiff was walking nearby, injuring the plaintiff in the process. *Id.* at 628–29.

¶ 16. The plaintiff sought to hold the defendant statutorily liable as a harborer-owner of the attacking dog. *Id.* at 628. Similar to Wisconsin's provision, the Minnesota statute subjected an owner of a dog to liability for injuries caused by the dog, and defined "owner" to include "any person harboring or keeping a dog." *Id.* at 629. The *Anderson* court rebuffed the defendant's argument, similar to that proffered here by Kontos, that as a mere owner of the Minnesota property, his relationship to the dog was too attenuated to make him a harborer. *Id.* at 633. Despite the fact the

495

defendant did not reside at the same property where the dog was residing when the attack occurred, and indeed actually resided in a different state, the *Anderson* court concluded that the defendant could be held liable to the plaintiff as a harborer of his son's dog.[5] *Id.* at 633–34.

¶ 17. To hold, as Kontos would like, that Kontos is not liable under WIS. STAT. § 174.02 because he himself did not reside at the Larsen property or exercise custody or control over or care for the dogs would require us to either read the word "harbor" out of the statutory definition of owner or ignore the definition of harbor provided for us by our supreme court. We can do neither.

## *Public Policy*

¶ 18. Kontos alternatively argues that even if he was a harborer of the dogs under WIS. STAT. § 174.02, judicial public policy considerations should nonetheless

---

[5] Considering other facts at issue in the case, the *Anderson* court remanded the case for a jury determination of whether the defendant in fact harbored his son's dog. *Anderson v. Christopherson*, 816 N.W.2d 626, 634 (Minn. 2012) ("[O]n these facts, a jury could reasonably conclude that [the defendant] harbored [the dog]."). Our own supreme court has stated: "Whether a person is one who 'harbors' or 'keeps' a dog is ordinarily a factual question for the fact finder and 'depends upon the peculiar facts and circumstances of each individual case.' " *Pawlowski v. American Family Mut. Ins. Co.*, 2009 WI 105, ¶ 20, 322 Wis. 2d 21, 777 N.W.2d 67 (citation omitted). However, as in *Pawlowski* and here, where the relevant facts are undisputed, the question of whether a defendant is a "harborer" or "keeper," and therefore a statutory owner, is a question of law we review de novo. *Id.* Further, in the case before us, Kontos has not suggested that the determination of whether he harbored the dogs should be made by a jury; indeed, he moved for summary judgment on the issue.

preclude his liability. This is an issue of law we decide independently of the circuit court. *Pawlowski*, 322 Wis. 2d 21, ¶ 16. In addressing public policy arguments, courts generally look at whether:

> [1] the injury is too remote from the negligence or [2] too "wholly out of proportion to the culpability of the negligent tort-feasor," or [3] in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or [4] because allowance of recovery would place too unreasonable a burden upon [a class of tortfeasors], or [5] be too likely to open the way to fraudulent claims, or [6] would "enter a field that has no sensible or just stopping point."

*Colla v. Mandella*, 1 Wis. 2d 594, 598, 85 N.W.2d 345 (1957) (citations omitted). While these factors refer to "negligence," the supreme court has held that courts may use them "to bar a claim under § 174.02, even if a plaintiff otherwise establishes liability." *Fandrey*, 272 Wis. 2d 46, ¶ 8. Public policy considerations are to be addressed "on a case-by-case basis." *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 818, 416 N.W.2d 906 (Ct. App. 1987).

¶ 19. Kontos contends that factors one, two, four, and six apply here to preclude his liability.[6] He argues that to hold him liable in this case would "shock the conscience of society" because it would "effectively result in a pure penalty against [him] for his mere ownership of the [Larsen home] and for his love and

---

[6] In his reply brief, Kontos contends for the first time on appeal that the third factor also applies. Because he did not raise this contention in his brief-in-chief, we do not consider it. *State v. Chu*, 2002 WI App 98, ¶ 42 n.5, 253 Wis. 2d 666, 643 N.W.2d 878 (we do not address issues raised by an appellant for the first time in a reply brief).

compassion as Janet's father." Public policy considerations do not preclude Kontos's liability.

¶ 20. Addressing the first two factors—whether the injury is too remote from the "negligence" or too disproportionate to Kontos's culpability, we conclude that neither factor weighs in favor of barring Kontos's liability. The *Pawlowski* court concluded that public policy did not preclude the homeowner-harborer's liability in that case in part because she did not appear to have made "a conscious effort" to reduce the risk of injury from the dog. *Pawlowski*, 322 Wis. 2d 21, ¶ 65. The court expressed specific concern that the homeowner apparently did not enforce a leash rule and made no inquiries prior to the attack regarding the offending dog's temperament. *Id.* Here, Kontos knowingly permitted this sizable pack of dogs to reside at the property for many months. He had been to the house with the dogs there on multiple occasions and, on at least one occasion, disciplined the dogs because they were playing "very roughly." Kontos has not suggested he ever put in place any rules or safety devices, attempted to limit the number of dogs at the property, made inquiries into the dogs' temperaments—either before or after disciplining them for playing "very roughly"—or took any steps whatsoever to help ensure the safety of visitors to his Larsen property.[7] Augsburger was allegedly attacked by the uncontrolled dogs when she visited Janet at the property, not while the Veiths had the dogs off the property for a vacation or even a walk. Her alleged injuries are not "too 'wholly out of proportion to' " Kontos's culpability. Further, an incident such as this alleged attack is the type the statute would ordinarily

---

[7] We note that in his deposition testimony, Ed Veith disclosed that the house was equipped with a "dog door" through which most of the dogs could exit the house.

498

cover. *See id.*, ¶ 71 (stating that the incident in that case—an uncontrolled dog attacking a neighbor walking near the home—"is not too remote from the act of harboring the dog to prohibit recovery. Indeed, it is the kind of incident that the statute would ordinarily cover."). Factors one and two do not preclude Kontos's liability.

¶ 21. Factor four also does not preclude liability. Kontos argues that making him liable would "place too unreasonable a burden on him as mere owner of the [home] and the father of Janet." It is not unreasonable to expect an owner of property who allows such a large number of dogs to live on the property to take precautions to protect visitors. *See id.*, ¶ 66. Again, Kontos has not suggested he did anything in this regard. Further, as the *Pawlowski* court similarly pointed out with regard to this factor and the dog-owning acquaintance in that case, nothing in this opinion precludes the Veiths from also being held liable as owners and keepers of the attacking dogs. *See id.*, ¶ 67 (clarifying that Wis. Stat. § 174.02 permits owners and keepers to be held liable, in addition to harborers).

¶ 22. Lastly, considering the sixth factor, we see no danger that subjecting Kontos to liability would "enter a field that has no sensible or just stopping point." Holding strictly liable a property owner who knowingly affords a sizable number of dogs shelter and lodging on his or her property for multiple months, even though the property owner is not personally residing at the property, does not create open-ended liability. Similar to *Pawlowski*, nothing in this decision would make a property owner liable as a statutory owner for "a mere 'transient invasion' " or "the casual presence" of a dog on his or her premises. *Id.*, ¶ 69 (citation omitted). Nor does this decision in any way

undermine the general rule precluding liability as to landlords for attacks by their tenants' dogs.[8]

¶ 23. In a case "so extreme that it would shock the conscience of society to impose liability," we could step in and preclude, as a matter of law, a party's liability despite the fact the party was a statutory owner of an offending dog. *Fandrey*, 272 Wis. 2d 46, ¶ 15 (citation omitted). This is not such a case. As a result, public policy considerations do not preclude Kontos's liability.[9]

## CONCLUSION

¶ 24. For many months Kontos knowingly afforded the dogs living at his Larsen property shelter and lodging and, as such, he harbored them. As public policy considerations do not shield him of legal responsibility for injuries the dogs allegedly inflicted on Augsburger, he is subject to liability as a statutory owner of the animals.

*By the Court.*—Order affirmed.

---

[8] Though Kontos at one point states he was "akin to an absentee landlord," he never suggests an actual landlord-tenant relationship existed between himself and the Veiths; indeed, he effectively concedes such a relationship did not exist and that he allowed the Veiths to reside at his Larsen home without any payment "out of his love and compassion as a father." As a result, we need not analyze whether the general rule that a landlord is not liable for harm caused by a tenant's dog applies to Kontos. *See Ladewig ex rel. Grischke v. Tremmel*, 2011 WI App 111, ¶ 14, 336 Wis. 2d 216, 802 N.W.2d 511 ("The general rule . . . [is that] a landlord, as landlord, cannot be held liable for injuries caused by a tenant's dog."). Since he does not contend he was the Veiths' landlord, the rule does not apply.

[9] We note that Kontos's liability is still subject to the doctrine of comparative negligence. *See* Wis. Stat. § 174.02(1)(a), (b); *Fandrey ex rel. Connell v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 20, 272 Wis. 2d 46, 680 N.W.2d 345.

¶ 25. REILLY, J *(dissenting)*. Whether a person is a statutory owner of a dog for purposes of liability under Wis. Stat. § 174.02 "is ordinarily a factual question for the fact finder and 'depends upon the peculiar facts and circumstances of each individual case.' " *Pawlowski v. American Family Mut. Ins. Co.*, 2009 WI 105, ¶ 20, 322 Wis. 2d 21, 777 N.W.2d 67 (citation omitted). Our supreme court has determined that when the facts are undisputed, as here, the circuit court may decide whether one is a statutory "owner" under Wis. Stat. § 174.001(5) and that we review such decisions independently upon appeal. *Pawlowski*, 322 Wis. 2d 21, ¶¶ 16, 20. I believe both the circuit court and the majority have erred in finding that Kontos is the statutory "owner" of the dogs alleged to have injured Augsburger. Not a single case cited by the majority has found that a person who resides in a home separate from the dog that caused the injury is the statutory "owner" of that dog solely by virtue of the person's ownership of the property where the dog resides with its legal owner.

¶ 26. The majority latches on to a single phrase from *Pawlowski* to determine that Wis. Stat. ch. 174 makes an "owner" of anyone who provides lodging, shelter, or refuge to a dog regardless of any other considerations. *See* Majority, ¶¶ 10–14. The majority's definition stretches the interpretation of the statute so as to arguably make every person who donates to a local humane society[1] liable for injuries caused by the dogs that the society shelters.

---

[1] As an example, the website for the Humane Animal Welfare Society of Waukesha County states that it "assures sanctuary for animals in need," HAWS, *Welcome to HAWS!*, http://www.hawspets.org/ (last visited Aug. 6, 2013), and "giv[es] shelter to local animals," HAWS, *HAWS and the No-Kill*

¶ 27. The majority's mechanistic approach ignores the critical difference between our case law, including *Pawlowski*, and the facts present in this case; Kontos did not provide shelter, lodging, or refuge to the dogs *in the home where he lived. Cf. Pawlowski*, 322 Wis. 2d 21, ¶¶ 28, 52, 54–55. Kontos did not legally own the dog(s)[2] that bit Augsburger. The dogs lived with their legal owners in Larsen, Wisconsin, some six to seven miles from where Kontos lived in Butte Des Morts, Wisconsin. Kontos was nowhere near the dog(s) when Augsburger was attacked. Kontos did not have the dogs in his care, control, or custody when the dog(s) bit Augsburger. Prior to the attack, Kontos never took care of the dogs, never exercised any control over the dogs, never exercised any custody of the dogs, never kept them at his residence in Butte Des Morts, never fed them, never bathed them, and never gave them water. Kontos did not like the dogs. Kontos yelled at the dogs "to knock it off and shut up" while visiting the Larsen residence one day, an incident the majority characterizes as "disciplin[ing] the dogs." Majority, ¶ 3. The fact that Kontos owned a residential property where dogs lived does not make him a statutory "owner" of those dogs.

¶ 28. The majority also fails to consider an issue central to Kontos's appeal: whether he is entitled to exemption from liability traditionally afforded to landlords. As Kontos "never suggests an actual landlord-tenant relationship existed," the majority concludes it

---

*Movement,* http://www.hawspets.org/haws_and_the_no-kill_ movement.html (last visited Aug. 6, 2013). These descriptions comport with the majority's hypertechnical application of the concept of "harbor[ing]." *See* Majority, ¶ 13.

[2] The record is undeveloped as to whether one or more dogs caused the alleged injuries.

"need not analyze whether the general rule that a landlord is not liable for harm caused by a tenant's dog applies to Kontos." Majority, ¶ 22 n.8. The majority confuses legal arguments with issues. *See State v. Weber*, 164 Wis. 2d 788, 789 & n.2, 476 N.W.2d 867 (1991). Kontos properly raised the issue of whether the exemption applicable in the landlord-tenant situation should apply to him, and I find that such an exemption is appropriate as Kontos was akin to a pro bono landlord at the time of the dog attack. Under this standard, Kontos "does not become a harborer of a tenant's dog merely by permitting a tenant to keep a dog." *Pawlowski*, 322 Wis. 2d 21, ¶ 55.

¶ 29. Here again, the majority's hypertechnical application of the law gets in the way of a common sense look at the facts of the case. The fact that Kontos's daughter did not pay U.S. currency, whether it be $1 or $1000 for the use of *her home* (albeit a residential property owned by her father), does not mean that consideration was not exchanged. Kontos's wife was dying (and has since passed), and mother and daughter wished to spend the mother's final days in each other's company. Kontos's daughter and her family lived out of state and did not have the financial means to move back to Wisconsin. Kontos provided a home where they could live in Wisconsin. The consideration was two-fold: Kontos and his wife provided a property and their daughter provided her presence. Each gave something to accomplish the mutual goal of having mother, daughter, and grandchild together during the mother/grandmother's final months. The fact that hard cash was not exchanged does not change the nature of the relationship. Kontos owned a residential property where his daughter lived just as a landlord owns a residential property where a tenant lives.

¶ 30. The majority's approach also ignores the public policy reasons behind the landlord-tenant exemption. The exemption "promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability." *Malone ex rel. Bangert v. Fons*, 217 Wis. 2d 746, 766–67, 580 N.W.2d 697 (Ct. App. 1998) (citation omitted). Public policy is not served by imposing strict liability upon those who provide lodging, shelter, or refuge to *people* through charity or gift versus no strict liability for the cold cash-receiving landlord.

¶ 31. The majority's definition of "owner" for purposes of WIS. STAT. § 174.02 is a definition gone too far. Just as a landlord is not a harborer under WIS. STAT. ch. 174 for a tenant's dog, Kontos was not a harborer for dogs that lived in his daughter's home (albeit in property owned by Kontos). The majority's reasoning as to what constitutes a harborer applies to every landlord but for the loophole of the exchange of money and a written agreement—a result not supported by our case law or public policy. I respectfully dissent.