DAVID T. PROSSER, J.
¶ 50. (dissenting).
On June 21, 2008, Julie Augsburger (Augsburger) visited the home of her longtime friend Janet Veith in rural Winnebago County. Augsburger had visited Janet, her husband Edward, and their daughter Jordan (the Veiths) on other occasions, and she knew that the Veiths kept multiple dogs on the premises. She asked Jordan whether the dogs had been let out of the house into a fenced-in yard because she had to walk through the yard to get to the barn where Janet was working. Jordan told her the dogs were not out.
¶ 51. When Augsburger entered the fenced-in area, she was suddenly attacked by four dogs. The dogs repeatedly bit her and tore off her pants. She was bitten at least 11 times and suffered serious lacerations on both legs — that is, on her left thigh, left calf, and right calf. Some of these lacerations required "surgical closure." The most serious laceration — on her right calf— measured ten centimeters, resulting in a "6 cm long *407 dented area." Augsburger was given morphine to relieve her pain when she was transported by ambulance to a local hospital, and she was given another opiate at the hospital.
¶ 52. In due course, Augsburger sued Janet and Edward Veith; Janet's father, George Kontos; and Kontos's insurer, Homestead Mutual Insurance Company, to recover damages. The question in this case is whether George Kontos may be held liable for the full amount of damages caused by the dogs, on grounds that he "harbored" the dogs under Wis. Stat. §§ 174.001(5) and 174.02(1).[1]
¶ 53. The majority answers this question "no," concluding that he is in no way liable. It reverses a published decision of the court of appeals, which affirmed a ruling of the Winnebago County Circuit Court, Gary R. Sharpe, Judge, that reached the opposite conclusion. Augsburger v. Homestead Mut. Ins. Co., 2013 WI App 106, 350 Wis. 2d 486, 838 N.W.2d 88. Because I believe the majority is misinterpreting and misapplying the applicable statutes, I respectfully dissent.
I
¶ 54. The statutory law in this case is found in Chapter 174 of the Wisconsin Statutes. Wisconsin Stat. § 174.02 is entitled "Owner's liability for damage caused by dog." Subsection (1), "Liability for Injury," provides in part:
(a) Without notice. .. . [T]he owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.
*408 (b) After notice. ... [T]he owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.
¶ 55. The term "owner" is defined in Wis. Stat. § 174.001(5): " 'Owner' includes any person who owns, harbors or keeps a dog." (Emphasis added.)
¶ 56. The quoted statutes were adopted at different times. Wisconsin Stat. § 174.001(5) was part of Section 8m, Chapter 289, Laws of 1979. It became effective on January 1,1981. Wisconsin Stat. § 174.02(1) was part of Section 10, Chapter 285, Laws of 1981. It became effective on May 1, 1982. Understanding the legislative history of these dog bite statutes is essential to rendering a correct interpretation of the statutes.
¶ 57. There have been dog bite statutes in Wisconsin since the early 1850s. Section 1620 of the Wisconsin Statutes of 1898 read in part as follows:
Owner's Liability. The owner or keeper of any dog which shall have injured or caused the injury of any person or property . .. shall be liable to the person so injured. . . without proving notice to the owner or keeper of such dog or knowledge by him that his dog was mischievous or disposed to kill [animals] ....
This same language appeared in Wis. Stat. § 174.02 (1923), and the language and substance of this statute remained largely unchanged until Wis. Stat. § 174.02 was repealed and recreated in 1982.
¶ 58. The above-quoted statute was not a strict liability statute. This was made clear in Chambliss v. Gorelik, 52 Wis. 2d 523, 191 N.W.2d 34 (1971), and in an earlier case, Nelson v. Hansen, 10 Wis. 2d 107, 102 N.W.2d 251 (1960).
*409 ¶ 59. In Chambliss, Justice Nathan Heffernan, writing for a unanimous court, stated:
At common law the owner or keeper of a dog was not liable for the vicious or mischievous acts of the dog unless he had prior knowledge of the vicious or mischievous propensities of the dog or unless the injury was attributable to the negligence of the owner or keeper. Nelson v. Hansen (1960), 10 Wis. 2d 107, 102 N.W.2d 251....
[I]n Nelson v. Hansen, ... the court determined that the legislature did not impose or intend to impose strict liability on the keeper of a dog. It was also determined that an action brought under the statute continued to be one for negligence but that the statute eliminated the necessity of proving scienter. In all other respects, the responsibility of an owner or keeper remained the same. As we said in Nelson v. Hansen, .. . page 115, after discussion of early cases:"... the statute only applied to injuries from mischievous or vicious acts of a dog for which at common law the owner would not be liable unless he had knowledge or ought to have known of such propensities."...
For cases under the statute in which no proof of scienter is required and where there is no evidence of the keeper's negligence ... there must be proof that the dog was vicious or mischievous... .
Thus, under the statute, it continues to be necessary to show that the dog, prior to the act complained about, had vicious and destructive habits. The statute merely eliminates the necessity of proving that the keeper had such knowledge.
Chambliss, 52 Wis. 2d at 528-30 (quoting Nelson, 10 Wis. 2d at 115).
¶ 60. A flurry of legislative activity in the early 1980s significantly altered the law. First, Wis. Stat. § 174.001(5) provided a definition of "owner" that added *410 the word "harbors," and also used the word "includes" before its reference to "any person who owns, harbors or keeps a dog." These changes extended dog bite liability to a broader group of people.
¶ 61. Second, the rewritten § 174.02(1) borrowed a provision from a statute that the legislature repealed in 1982 — namely, Wis. Stat. § 174.03 (1979) — that provided double damages when a dog known to be dangerous is responsible for a repeat attack on animals; the rewritten statute made double damages available when a repeat attack injures a person.
¶ 62. Third, the rewritten § 174.02(1) also created strict liability. A strict liability statute imposes liability for a dog bite irrespective of an "owner's" scienter and irrespective of whether the dog had a previous propensity for biting.
¶ 63. The strict liability point was discussed in Cole v. Hubanks, in which the court said: "Wisconsin Stat. § 174.02 is a 'strict liability' statute wherein the legislature has made the policy choice to place the burden of damage caused by a dog on the dog's owner." Cole v. Hubanks, 2004 WI 74, ¶ 22, 272 Wis. 2d 539, 681 N.W.2d 147 (citing Becker v. State Farm Mut. Auto. Ins. Co., 141 Wis. 2d 804, 815, 416 N.W2d 906 (Ct. App. 1987); Fifer v. Dix, 2000 WI App 66, ¶ 12, 234 Wis. 2d 117, 608 N.W.2d 740).[2]
¶ 64. The court's statement in Cole was affirmed unanimously in Pawlowski v. American Family Mutual Insurance Co., 2009 WI 105, ¶¶ 14, 17, 322 Wis. 2d 21, 777 N.W.2d 67, when the court said, "Both a legal owner and a statutory owner of a dog can be simultaneously *411 strictly liable under Wis. Stat. § 174.02.... Section 174.02 is a strict liability statute."
¶ 65. Surprisingly, the majority opinion places little emphasis on the history of the two statutes. In fact, it seeks to compare the present statutes, not to the prior statute in force from 1898 to 1982, but to Wisconsin common law that has not existed since at least 1871. See § 8, ch. 67, Laws of 1871. The majority relies selectively on a canon of statutory construction (statutes in derogation of the common law), Majority op., ¶ 40, but it fails to acknowledge that one of the present statutes contains a definition of "owner" that uses the word "includes," which invites a broader interpretation of the statute. See Black's Law Dictionary 766 (7th ed. 1999) ("The participle including typically indicates a partial list...."); see also Hirschhorn v. Auto-Owners Ins. Co., 2012 WI 20, ¶ 36, 338 Wis. 2d 761, 809 N.W2d 529 ("When a list of terms follows the word 'includes,' the list is commonly understood to be non-exhaustive.").
¶ 66. The purpose of the revised dog bite statutes was well stated in Pawlowski, 322 Wis. 2d 21, ¶ 76:
The purpose of Wis. Stat. § 174.02 is "to protect those people who are not in a position to control the dog." [quoting Armstrong v. Milwaukee Mut. Ins. Co., 202 Wis. 2d 258, 268, 549 N.W.2d 723 (1996).] Imposing liability ... furthers the legislative policy embodied in Wis. Stat. § 174.02 of protecting innocent people from injury by dogs, of ensuring that an innocent victim of a dog bite recovers compensation, and of making a person who owns, harbors, or keeps a dog responsible for injuries inflicted by the dog.
¶ 67. In sum, the statutory history of Wis. Stat. §§ 174.001(5) and 174.02(1) and the clear policy embodied in the statutes are not consistent with the majority's restrictive reading of these statutes.
*412 II
¶ 68. The key word requiring interpretation is "harbors." I agree with much of the majority's discussion of the pertinent case law. I disagree with the majority's failure to apply that law.
¶ 69. The majority opinion reads in part:
The term "harbor" is not defined in the statute. . .. Wisconsin caselaw, however, has addressed the definition of the term "harbor" and we find guidance from those cases.
A general definition of the term "harborer" is provided in Pattermann v. Pattermann, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992). There, the court defined the term by contrasting it with the term "keeper." It explained "[c]ourts generally define 'keeping' as exercising some measure of care, custody or control over the dog, while 'harboring' is often defined as sheltering or giving refuge to a dog. Thus, 'harboring' apparently lacks the proprietary aspect of 'keeping.'" Id. Further expounding on the meaning of "harboring," the court stated that: " 'harboring a dog' means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog." Id. at 151.
Majority op., ¶¶ 20-21 (emphasis added)(footnote omitted).
¶ 70. In light of this case law, the question is whether George Kontos harbored the Veiths' dogs; that is, whether he provided lodging or shelter for the Veiths' dogs.
¶ 71. The circuit court (Judge Sharpe) said:
The definition of harbor is "to give shelter or refuge to" and there is no question that Mr. Kontos gave *413 shelter to Edward and Janet Yeith and their dogs. No landlord tenant relationship existed. .. . [T]he Court feels that [Mr. Kontos] had sufficient connection and that the arrangement was based upon family as opposed to a landlord tenant/business relationship. As a result, the Court finds that Mr. Kontos harbored the dogs pursuant to Wis. Stats. § 174.001(5)....
(Emphasis added.)
¶ 72. In a well-reasoned opinion, the court of appeals affirmed this determination:
Like the homeowner in Pawlowski, Kontos afforded the Veiths' dogs shelter and lodging for many months, some for more than a year, before the incident, and thus he harbored them. Further, his status as a harborer is not undermined by the fact he was not also a keeper exercising custody or control over the dogs.
Augshurger, 350 Wis. 2d 486, ¶ 12.
¶ 73. The court added:
Kontos contends in his reply brief that because he personally resided in a different home from the dogs, this case is substantively distinguishable from Pawlowski. We disagree. In both cases, the owner of the homes knowingly afforded lodging and shelter to the dogs, the relevant consideration in deciding a question of "harboring." The fact that Kontos resided in a separate home from the dogs, and therefore was not in a convenient position to and in fact did not exercise custody or control over or care for the dogs, would be most relevant if the issue was whether Kontos was a "keeper." Indeed, had the legislature limited the statutory definition of "owner" to only owners and keepers of dogs, we would have no difficulty holding for Kontos. But the legislature did not so limit the statute. In choosing to include "harbor[ers]n in the definition of *414 owners, the legislature broadened the pool of potentially liable persons beyond just those who own or keep offending dogs.
Id., ¶ 13.
¶ 74. The majority opinion correctly states that the "mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02." Majority op., ¶ 48. Instead, "the totality of the circumstances determines whether the legal owner of the property has exercised the requisite control over the property to be considered a harborer and thus an owner under the statute." Id.
¶ 75. This brings us to the totality of the circumstances and raises the question of what control Mr. Kontos did not exercise over "the circumstances."
Ill
¶ 76. The facts are not in dispute. In 2007 George Kontos and his wife were living at their home in Butte Des Morts in Winnebago County. Mrs. Kontos was seriously ill. Their daughter, Janet Veith, was living with her husband and daughter in Colorado, under circumstances that permitted the Veiths to maintain horses and dogs on their property.
¶ 77. Mr. and Mrs. Kontos wanted their daughter to come home to be near her mother. Janet Veith wanted to come. However, the Veiths were in no position financially to give up what they had in Colorado in terms of property and employment to move to Wisconsin. George Kontos made that possible.
¶ 78. In sum, Mr. Kontos asked that Janet and her family relocate to Wisconsin to be near Mrs. Kontos. Mr. Kontos helped pay for the move. Mr. Kontos purchased *415 a house for the Veiths to live in and he selected a house in a rural area that permitted the Veiths to keep horses and dogs. He continued to own that property. He paid the taxes on the property. And he acquired the only insurance policy on the property.
¶ 79. The Veiths did not pay rent for the property and were not expected to pay rent. Even if they earned some income, the Veiths were financially subsidized by Mr. Kontos. For example, he made Janet's car payments. When Janet wrote Mr. Kontos a $2,000 check as partial reimbursement for this assistance, he did not cash it. Why? When Mr. Kontos was asked in a deposition whether it was "accurate to say that as far as [he] knew [the Veiths] just have enough money to get by," he replied "Yes." The deposition continued: "[Question:] Is that yes? [Answer:] That's probably a generous statement."
¶ 80. As the court of appeals explained, "Kontos was aware the Veiths had two dogs when they moved into the property in February 2007, and he permitted these and additional dogs they acquired a few months later to be kept on the property." Augsburger, 350 Wis. 2d 486, ¶ 3.
¶ 81. At the time of the attack in June 2008, there were six dogs on the property. The presence of the dogs was not unknown to Mr. Kontos because he visited the property on multiple occasions and had some interaction with them.[3]
¶ 82. The majority opinion states: "Kontos would rarely go near the dogs. He never fed the dogs, watered, or bathed them. Further, he did not groom them or take *416 them to the vet. He did not pay for their food, take care of them, or instruct his daughter how to take care of them." Majority op., ¶ 8.
¶ 83. Most of these statements are not relevant because they involve "keeping" a dog. Mr. Kontos is not alleged to have "kept" the dogs. Even so, the statements go too far. Although Mr. Kontos may not have gone to the supermarket to buy food for the dogs, his various financial subsidies to the Veiths made it possible for the Veiths to acquire additional dogs, buy food for the dogs, and get all of the dogs properly licensed.
¶ 84. Mr. Kontos admittedly did not assert direct control over the dogs but he had complete authority to remove them from the property, as he could have asked the Veiths to leave the property. He did exercise a lot of control over the property — more than simple ownership. For instance, he stored his boat on the property.
¶ 85. Looking at the totality of the circumstances, it would be hard to contend that Mr. Kontos did not shelter the Veith family. It would be hard to contend that Mr. Kontos did not shelter the Veith horses, inasmuch as he enabled them to move from Colorado and bought property with a barn for horses.
¶ 86. Why then did he not shelter the dogs? Why was the circuit court clearly erroneous when it found that Mr. Kontos had harbored the dogs? The majority does not provide a satisfactory answer.
IV
¶ 87. The majority cannot be indifferent to the plight of the victim in this case. It knows that the Veiths, who owned, harbored, and kept six dogs on the property but had no liability insurance — even though there had been a previous dog bite incident involving a *417 woman who kept her horse with the Veiths — are in no position to pay damages to Julie Augsburger. Thus, it must be acting in the belief that it is serving some higher purpose when it denies recovery.
¶ 88. The first purpose, apparently, is to protect landlords from liability for the torts of their tenants.
¶ 89. The majority concludes that "mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02." Majority op., ¶¶ 3, 48. This principle is unassailable. It is supported by our decisions in Gonzales v. Wilkinson, 68 Wis. 2d 154, 158, 227 N.W.2d 907 (1975), and Smaxwell v. Bayard, 2004 WI 101, ¶¶ 46-54, 274 Wis. 2d 278, 682 N.W.2d 923. The holdings in these cases are not in jeopardy.
¶ 90. Nonetheless, the majority is unwilling to acknowledge the pervasive and unusual influence that Mr. Kontos had over the Veith family's circumstances. The "mere ownership" of the property is but one of the circumstances present in this case; it is the totality of all the circumstances that demonstrates that Kontos harbored the dogs that mauled Julie Augsburger.
¶ 91. The circuit court stated unequivocally that "No landlord tenant relationship existed" between Mr. Kontos and the Veiths. Yet the majority seeks to keep this issue alive, saying: "We need not determine whether there was a landlord-tenant relationship in this case." Majority op., ¶ 30.
¶ 92. In truth, this case is not about landlord liability for dog bites. This case is about a harborer's liability for dog bites. The majority's concern about landlords on these facts is not well founded.
¶ 93. A second purpose is to demonstrate the court’s respect for the American Law Institute's Restatements of the Law. The majority notes that "[t]he *418 Restatement... emphasizes the importance of considering whether the landowner is residing on the premises with the dog," and that "[t]he fact scenario in this case . . . matches an example provided in the Restatement (Second) of Torts § 514." Majority op., ¶¶ 32-33. This example states:
Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept.
Restatement (Second) of Torts § 514 cmt. a (1977).
¶ 94. The majority's focus on the Restatement (Second) of Torts is misguided. Section 514 concerns "Wild Animals or Abnormally Dangerous Domestic Animals." The example from § 514 dates back at least to 1938 and the Restatement (First) of Torts, in which it also appears. See Restatement (First) of Torts § 514 cmt. a (1938). That section, too, dealt with "Wild Animals or Abnormally Dangerous Domestic Animals."
¶ 95. The Restatement considers dogs, however, to be domestic animals that are not abnormally dangerous. Restatement (Second) of Torts § 509 cmt. f (1977).[4] Indeed, neither Restatement scheme imposes strict liability on owners or harborers of dogs. Under the Restatement:
*419 one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
(a) he intentionally causes the animal to do the harm, or
(b) he is negligent in failing to prevent the harm.
Restatement (Second) of Torts § 518 (1977).
¶ 96. The treatment of dog bite liability under the Restatement differs from the treatment of dog bite liability under the Wisconsin statute even before the 1982 shift to strict liability. Our statute provided for liability of owners of vicious or mischievous dogs even if the owner lacked scienter as to the dog's nature and did not act intentionally or negligently. See Chambliss, 52 Wis. 2d at 530. The Restatement, on the other hand, requires negligence or intent in the absence of scienter. Needless to say, the Restatement scheme differs greatly from the strict liability scheme currently in place.
¶ 97. Affirming the circuit court's determination that Kontos harbored the dogs under the totality of these circumstances would not offend the Restatement —the Restatement has no relation to Wisconsin's dog bite statute. Our definition of "harbor" in a strict liability statute passed in 1982 should not be guided by a comment on a negligence scheme from 1938.
V
¶ 98. In conclusion, the majority misses the mark in its application of the law to the facts. Only by ignoring the clear purpose of Wisconsin's strict liability dog bite statute and looking instead to outmoded authority and a canon of construction contradicted by the statute itself, does the majority arrive at its conclusion *420 that Kontos did not "harbor" the Veiths' dogs. Yet this result forecloses any realistic possibility that Julie Augsburger will recover damages for her medical expenses, as well as her scars and her pain and suffering. This outcome contradicts the language, design, and purpose of the statute, and unfairly victimizes Augsburger a second time.
¶ 99. For the foregoing reasons, I respectfully dissent.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 The decision in Becker v. State Farm Mutual Automobile Insurance Co., 141 Wis. 2d 804, 416 N.W.2d 906 (Ct. App. 1987), relied on Meunier v. Ogurek, 140 Wis. 2d 782, 412 N.W.2d 155 (Ct. App. 1987).

 For example, Kontos would sometimes yell at the dogs to be quiet when he was visiting the Veiths.

 Restatement (Second) of Torts § 509 cmt. f (1977) states:
Although dogs, even hunting dogs, have no material utility comparable to cattle, horses and other livestock, they have from time immemorial been regarded as the friends and companions of man.
The great majority of dogs are harmless, and the possession of characteristics dangerous to mankind or to livestock is properly regarded as abnormal to them. Consequently the possessor of a dog is not liable for its biting a person or worrying or killing livestock unless he has reason to know that it is likely to do so.