# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP641 |
| COMPLETE TITLE: | Julie A. Augsburger,<br>            Plaintiff-Respondent,<br>      v.<br>Homestead Mutual Insurance Company and George Kontos,<br>            Defendants-Appellants-Petitioners,<br>ABC Insurance Company, Janet C. Veith, Edward Veith and<br>Convergys Corporation,<br>            Defendants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 350 Wis. 2d 486, 838 N.W.2d 88)
(Ct. App. 2013 – Unpublished)
PDC No.: 2013 WI App 106

| | |
|---|---|
| OPINION FILED: | December 26, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 4, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Winnebago |
| JUDGE: | Gary R. Sharpe |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | PROSSER, J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants-petitioners, there were briefs by *Robert N. Duimstra*, *Jarrod J. Papendorf*, *Kurt F. Ellison*, and *Menn Law Firm, Ltd.*, Appleton. Oral argument by *Jarrod J. Papendorf*.


For the plaintiff-respondent, the cause was argued by *Susan R. Tyndall*, with whom on the briefs was *Joseph M. Troy* and *Habush, Habush & Rottier S.C.*, Appleton and Waukesha.

An amicus curiae brief was filed by *Timothy M. Barber* and *Axley Brynelson LLP*, Madison; and *Monte E. Weiss* and *Weiss Law Office S.C.*, Mequon, on behalf of Wisconsin Defense Counsel.

An amicus curiae brief was filed by *William C. Gleisner III* and *Law Offices of William Gleisner*, Hartland, on behalf of Wisconsin Association for Justice.

No.   2012AP641
(L.C. No.   10CV844)

STATE OF WISCONSIN           :     IN SUPREME COURT

Julie A. Augsburger,

         Plaintiff-Respondent,

    v.

Homestead Mutual Insurance Company and George
Kontos,

         Defendants-Appellants-Petitioners,

ABC Insurance Company, Janet C. Veith, Edward
Veith and Convergys Corporation,

         Defendants.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**FILED**

**DEC 26, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1   ANN WALSH BRADLEY, J. Petitioners, George Kontos and his insurance company, Homestead Mutual Insurance Company, seek review of a published decision of the court of appeals.  It affirmed the circuit court's determination that Kontos could be

held liable to the plaintiff, Julie Augsburger, for injuries caused by his daughter's dogs.[1]

¶2 Kontos contends that he cannot be held strictly liable for injuries caused by the dogs because he is not an "owner" of the dogs under the statutory definition. According to Kontos, although the statutory definition of "owner" includes a "harborer," he did not harbor his daughter's dogs when he permitted his daughter and her family to live in a house he owned while he resided elsewhere. Kontos asserts that because he lived elsewhere, he did not have the requisite control to be a harborer under the statute.

¶3 We conclude that mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02 (2011-12).[2] Rather, the totality of the circumstances determines whether the legal owner of the property has exercised the requisite control over the property to be considered a harborer and thus an owner under the statute.

¶4 We determine that Kontos is not an "owner" under the statute.[3] A statutory owner includes one who "owns, harbors or

---

[1] Augsburger v. Homestead Mutual Ins. Co., 2013 WI App 106, 350 Wis. 2d 486, 838 N.W.2d 88 (affirming judgment of the circuit court for Winnebago County, Gary R. Sharpe, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[3] Because this issue is dispositive, we need not reach the alternative argument raised by Kontos——that even if he is an owner, public policy weighs against holding him liable.

keeps a dog." Wis. Stat. § 174.001(5). It is undisputed that Kontos did not legally own the dogs and did not "keep" them. Additionally, we conclude that he was not a harborer as evidenced by the totality of the circumstances. He neither lived in the same household as the dogs nor exercised control over the property on which the dogs were kept. Accordingly, we reverse the court of appeals.

I

¶5 The relevant facts in this case are undisputed. Kontos owned a property in Larsen, Wisconsin on Grandview Road ("the Grandview property"). He purchased the Grandview property for his daughter, Janet Veith, and her family to live in so that she could be near her mother who was having medical difficulties at the time.

¶6 Kontos did not reside at the property with the Veiths. General repairs and maintenance were done by Veith's husband. This included partially remodeling the interior of the home. There was no formal lease between Kontos and the Veiths. Kontos was aware that the Veiths were having financial difficulties and he did not expect them to pay rent. At times he gave his daughter money to help with the bills. She dealt with Kontos as her dad and did not think of him as her landlord. In explaining the arrangement, Veith explained that the Grandview property was "[Kontos'] house. We live there." In contrast, her husband did consider Kontos to be their landlord.

¶7 At the time Kontos purchased the property he was aware that the Veiths owned horses and two dogs and that the animals

3

would be living with the family. Kontos' deposition testimony reflects that part of the reason he chose the Grandview property was its suitability for the horses. After the Veiths moved in, they rescued another dog named Bailey. Bailey was pregnant and had four puppies. The Veiths kept three of the puppies. Although Kontos was not fond of the dogs, he did not tell his daughter to remove them from the property. The Veiths acknowledged he had the authority to prohibit the dogs from the property, but that he did not exercise that authority. Although Kontos apparently appeared on the property on multiple occasions, the record reveals that it was not frequent.

¶8 When he did visit, Kontos would rarely go near the dogs. He never fed the dogs, watered, or bathed them. Further, he did not groom them or take them to the vet. He did not pay for their food, take care of them, or instruct his daughter how to take care of them. He did, however, yell at the dogs a few times to be quiet.

¶9 On the date of the incident Veith invited Augsburger to visit her at the Grandview property. When Augsburger arrived, Veith's daughter informed her that Veith was in the barn. As Augsburger made her way to the barn, four dogs ran at her from the house. They attacked her and bit her multiple times.

¶10 Augburger filed a complaint against the Veiths, Kontos, and Homestead Mutual Insurance Company. In the complaint Augsburger alleged that Kontos and the Veiths were negligent in keeping and controlling the dogs and were liable

4

for her injuries under Wis. Stat. § 174.02(1), which imposes strict liability on dog owners for injuries caused by their dogs.

¶11 Both Kontos and Augsburger filed summary judgment motions addressing the issue of whether Kontos was a statutory owner.[4] Kontos relied on Smaxwell v. Bayard, 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923, which held that under the circumstances a landlord could not be held liable for injuries caused by a tenant's dog. Augsburger relied on Pawlowski v. American Family Ins. Co., 2009 WI 105, 322 Wis. 2d 21, 777 N.W.2d 67, which determined that a landowner was a statutory owner when she harbored a dog by allowing the dog and its legal owner to reside in her residence.

¶12 The circuit court determined that the term "harbor" means "to give shelter or refuge to" and concluded that Kontos gave shelter to the Veiths and their dogs. Accordingly, it determined that he was a statutory owner.

¶13 Kontos and his insurer filed an interlocutory appeal, asserting that he was not a statutory owner because he did not exercise custody or control over or care for the dogs, and that public policy precluded his liability. The court of appeals affirmed the circuit court, reasoning that Kontos was a harborer under the statute because he was the owner of the home and

---

[4] Homestead Mutual Insurance Company also filed a summary judgment motion seeking a determination that the Veiths were not "insureds" under the policy it provided to Kontos. The circuit court granted that motion.

5

knowingly afforded lodging and shelter to the dogs. Augsburger v. Homestead Mutual Ins. Co., 2013 WI App 106, ¶¶13-14, 350 Wis. 2d 486, 838 N.W.2d 88. It further determined that public policy considerations did not preclude Kontos' liability. Id., ¶23.

II

¶14 In this case, we are asked to review the court of appeals' decision affirming the circuit court's grant of summary judgment to Augsburger. When we review grants of summary judgment we apply the same methodology as does the court of appeals and the circuit court. Pawlowski, 322 Wis. 2d 21, ¶15. Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

¶15 Here, the relevant facts are not in dispute. At issue is whether Kontos can be held liable as an "owner" under Wis. Stat. § 174.02. Statutory interpretation is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. Pawlowski, 322 Wis. 2d 21, ¶16.

¶16 We look first to the statutory language at issue. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." Id., ¶46. Prior caselaw can aid in this inquiry as it "may illumine how we have

6

previously interpreted or applied the statutory language." Belding v. Demoulin, 2014 WI 8, ¶16, 352 Wis. 2d 359, 843 N.W.2d 373.

¶17 Our interpretation of a statute is guided also by the canons of statutory construction. "When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings." Pawlowski, 322 Wis. 2d 21, ¶22. Further, "[s]tatutes in derogation of the common law are strictly construed." Fuchsgruber v. Custom Accessories, Inc., 2001 WI 81, ¶26, 244 Wis. 2d 758, 628 N.W.2d 833; see also NBZ, Inc. v. Pilarski, 185 Wis. 2d 827, 836, 520 N.W.2d 93 (Ct. App. 1994) ("A statute in derogation of the common law must be strictly construed so as to have minimal effect on the common law rule.").

III

¶18 We begin with the language of the statutes. Wisconsin Stat. § 174.02, often referred to as the dog bite statute, imposes strict liability on dog owners for injuries caused by their dogs. It states: "the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing

injury to a person, domestic animal or property." Wis. Stat. § 174.02(a).[5]

¶19 A neighboring statute contains a definition of the term "owner." Wisconsin Stat. § 174.001 provides: "As used in this chapter, unless the context indicates otherwise: . . . 'Owner' includes any person who owns, harbors or keeps a dog." Wis. Stat. § 174.001(5). The parties agree that Kontos was not the legal owner of the dogs and did not keep them, but dispute whether he harbored them.

¶20 The term "harbor" is not defined in the statute. Accordingly, the plain language of the statutory scheme fails to provide clear guidance on how the term "harbor" should be interpreted in the present situation. Wisconsin caselaw, however, has addressed the definition of the term "harbor" and we find guidance from those cases.

¶21 A general definition of the term "harborer" is provided in Pattermann v. Pattermann, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992).[6] There, the court defined the term by contrasting it with the term "keeper." It explained

---

[5] Subsection (b) of the statute provides: "After notice. Subject to s. 895.045 and except as provided in s. 895.57 (4), the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property." Wis. Stat. § 174.02(b).

[6] The comment in Pattermann v. Pattermann, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992), that a landowner could be liable under a common law negligence theory for injuries caused by a known dangerous dog allowed on her premises was abrogated in Smaxwell v. Bayard, 2004 WI 101, ¶42 n.8, 274 Wis. 2d 278, 306, 682 N.W.2d 923.

"[c]ourts generally define 'keeping' as exercising some measure of care, custody or control over the dog, while 'harboring' is often defined as sheltering or giving refuge to a dog. Thus, 'harboring' apparently lacks the proprietary aspect of keeping.'" Id. Further expounding on the meaning of "harboring," the court stated that: "'[h]arboring a dog' means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog." Id. at 151. Thus, it determined that a mother who permitted her adult son to bring his dog to a family gathering was not a "harborer." Id.

¶22 Whether an individual fits within this definition of "harborer" depends upon "the peculiar facts and circumstances of each individual case." Pawlowski, 322 Wis. 2d 21, ¶20; Hagenau v. Millard, 182 Wis. 544, 547, 195 N.W. 718 (1924). In other words, the determination is based on a totality of the circumstances. Cases undergoing such an analysis suggest that whether the landowner lives on the premise with the dog is an important factor in making the determination.

¶23 For example, this court recently construed the term "harbor" in Pawlowski, 322 Wis. 2d 21. In that case, a homeowner allowed an acquaintance and his dogs to live with her. Id., ¶9. During that time, one of the dogs attacked the plaintiff. Id., ¶11. Relying on the definition of "harborer" in Pattermann, the court determined that the homeowner was a statutory owner under Wis. Stat. § 174.02. Id., ¶26 (quoting

9

Pattermann, 173 Wis. 2d at 149 n.4).  It explained that it reached an outcome different from that in Pattermann due to the different facts.  Specifically, it observed that in Pattermann "the dog did not live in the house, and the homeowner had not 'fed or cared for the dog in any way.'"  Id., ¶28.

¶24  The Pawlowski court also acknowledged caselaw holding generally that landlords are not liable for the actions of their tenants' dogs.  Id., ¶52 (citing Smaxwell, 274 Wis. 2d 278; Gonzales v. Wilkinson, 68 Wis. 2d 154, 227 N.W.2d 907 (1975); Malone v. Fons, 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998)).  It noted that in traditional landlord-tenant cases, "the landlord had limited control over the tenant's premises." Id.  It explained that the circumstances it was considering were different because the dog and its owner lived in a bedroom in the landowner's home.  Id.  Thus, the dog owner was "more akin to a houseguest than a tenant," and so the landlord-tenant caselaw did not apply.  Id.

¶25 Other cases construing "owner" in the context of liability for dog bites likewise suggest that a landowner who lives in a separate residence from a dog is not typically considered a statutory owner of that dog.  In Hagenau, 182 Wis. 544, the court considered a situation where Ritter, who was the defendant's sister-in-law and employee, rented two rooms in the defendant's building in which Ritter and her dogs lived.  The court stated that: "the word 'harbor' in its meaning signifies protection; and it has been held that the keeper is one who

10

treats the dog as living at his house and who undertakes to control his actions. . . ." Id. at 547.

¶26 The Hagenau court stressed the importance of where the landowner was living. It noted that the defendant "occupied separate and distinct portions of the premises and maintained a separate and distinct home or place of abode." The court further determined that "[t]here is no evidence, however, in the case which tends to indicate that [defendants] could be deemed to be harborers of the dogs; that they furnished them with shelter, protection, or food, or that they exercised control over the dogs." Id. at 548. Accordingly, it concluded that the defendants were not liable as owners. Id. at 549.

¶27 The court addressed the alternative scenario of a defendant who permitted his adult daughter and her dog to live with him in Koetting v. Conroy, 223 Wis. 550, 270 N.W. 625 (1937). The court observed that the dog lived "in the dwelling house of [defendant], with his knowledge and permission, and fed from the remnants of his table." Id. at 552. Additionally, it stated that "[w]here a child is the owner of a dog kept on the premises of the father, who supplies it with food and furnishes it with shelter upon his premises, the father is deemed to be a keeper of the dog." Id. at 552 (quoting Hagenau, 182 Wis. at 547). Accordingly, the court determined that the defendant was a keeper under the statute.

¶28 Although Koetting discussed "owner" in terms of "keeper" and not "harborer," the opinion seems to use the words interchangeably. See id. at 555 ("One purpose of the statute is

11

to protect domestic animals from injury by whomsoever the dogs are kept or harbored."); id. at 552 (noting that in order to make a case against a defendant under Wis. Stat. § 174.02, a plaintiff must show facts "which made him the keeper of the dog").

¶29 Further support for the importance of where a landowner resides can be found in Malone v. Fons, 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998). In that case the court considered whether a landlord was a harborer of a dog owned and kept by a tenant. The court concluded that "a landlord does not become a harborer of a tenant's dog merely by permitting his or her tenant to keep the dog." Id. at 766.

¶30 Augsburger argues that landlord-tenant cases, such as Malone, are not applicable because there was no formal rental agreement between Kontos and the Veiths. In response, Kontos asserts that the Veiths were tenants-at-will. We need not determine whether there was a landlord-tenant relationship in this case. As indicated by Pawlowski, 322 Wis. 2d 21, ¶52, our focus is not on the official relationship between the dog owner and the landowner; rather our focus is on the amount of control the landowner exerts over the premises on which the dog is kept——whether the dog's legal owner is more akin to a houseguest or a tenant.

¶31 The rule we glean from the cases discussed is supported by the Restatement (Second) of Torts, § 514 cmt. a (1977). The Restatement stresses that land ownership by itself is not enough to qualify a landowner as a harborer: "the

12

possession of the land on which the animal is kept, even when coupled with permission given to the third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal." The court of appeals has previously cited this language with approval, Malone, 217 Wis. 2d at 766 n.7, and we likewise find it persuasive.

¶32 The Restatement further emphasizes the importance of considering whether the landowner is residing on the premises with the dog. It explains that an individual "harbors [an animal] by making it part of his household." Id. It states that: "[t]his he may do by permitting a member of his household . . . to keep the animal either in the house or on the premises that are occupied as the home of the family group of which he is the head." Id.

¶33 The fact scenario in this case (although admittedly more detailed) matches an example provided in the Restatement (Second) of Torts § 514. In explaining who qualifies as a harborer, the Restatement observed that "a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power." Id. Similarly here, Kontos' ownership of the land on which his daughter resides in a separate residence is insufficient to

qualify Kontos as a harborer even though he possessed the power to exclude the dogs but failed to exercise that power.[7]

¶34 Cases from a number of other jurisdictions likewise support the view that whether the landowner resides on the premises with the dog is relevant to determining whether the landowner is a harborer. See, e.g., Carr v. Vannoster, 281 P.3d 1136, 1144 (Kan. Ct. App. 2012) ("[Defendant] was not a harborer of [his son's] dog . . .; [Son] was not a member of [defendant's] household. [Son] maintained his own household on the premises where he lived with his wife. The home where he kept his dog was not the home or premises occupied as the home of the family group of which [defendant was] the head."); Barnett v. Rowlette, 879 S.W.2d 543, 544 (Mo. Ct. App. 1994) ("the fact that Kenneth was in possession of [the dog] and lived in a separate residence from [the landowner] prevents the conclusion from being drawn that [the landowner] harbored [the dog].").

¶35 The court of appeals in this case relied on another out-of-state case, Anderson v. Christopherson, 816 N.W.2d 626 (Minn. 2012), to reach its conclusion that as the owner of the land, Kontos was a statutory owner of the dogs. Augsburger, 350

---

[7] The dissent criticizes the use of the Restatement to support our analysis. Dissent ¶¶93-95. It maintains that both section 514 and 518 of the Restatement differ from the strict liability scheme currently in place in Wisconsin for domestic dog bites. We agree and accordingly apply neither. We do, however, cite to section 514 as an analogous strict liability scheme that discusses what constitutes a "harborer."

14

Wis. 2d 486, ¶15. In Anderson, the defendant had two houses. He permitted his son who owned a dog to visit his Minnesota house with his fiancée. 816 N.W.2d at 629. The defendant specifically gave permission for his son to bring the dog, but established rules for the dog's presence. Id. The defendant lived in another state and was not present when his son visited. Id. The Minnesota Supreme Court determined that the defendant could be held liable as a harborer of the dog, and remanded the case for a jury determination on the issue. Id. at 633.

¶36 Anderson does not convince us that mere ownership of the property on which a dog is kept is sufficient to qualify the landowner as a harborer. It did not hold that a defendant necessarily is a harborer if he owns the property on which the dog resides. Indeed, it stated that Minnesota caselaw "requires that a harborer do more than exercise control over land upon which the dog resides." Id. Further, Anderson quoted the Restatement (Second) of Torts § 514 with approval. Id. ("neither the 'mere right to exclude' nor '[t]he possession of the land on which the animal is kept, even coupled with permission given to a third person to keep it' were sufficient to convert the landlord of a property into a harborer.").

¶37 Insofar as Anderson considered the issue of a defendant's ownership of the property, it merely held that property ownership was a factor to consider in answering the question of whether a landowner is a harborer and remanded the case for a jury to decide whether under the facts of the case the defendant was an owner. Id. at 633-34. Thus, Anderson does

15

not militate toward finding a landowner to be per se an owner of a dog residing on his land.

¶38 A narrow interpretation of the word "harbor" is consistent with the canons of statutory construction. Augsburger raised the concern that this court would include control in the definition of harbor, conflating the word "harbor" with the word "keep" in Wis. Stat. § 174.001, which would conflict with the canon of construction that different words be given different meanings. See Pawlowski, 322 Wis. 2d 21, ¶22 ("[w]hen the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."). Whereas Pawlowski defines "keeping" as "exercising some measure of care, custody or control over the dog," id., ¶26, Augsburger maintains that the court should not put any requirement for control into the definition of "harborer."

¶39 Our interpretation of the dog bite statute does not overlook the canon of construction that Augsburger cites. We acknowledge that in interpreting "harborer" in a manner that considers where the landowner resides necessarily takes into consideration some aspect of control. An off-premises landowner generally has less control over the property than an on-premises landowner. However, the control that is implicated in our interpretation of "harborer" is not the same as the control an individual must exercise to be a "keeper." The control considered in the analysis of "keeper" is control over the dog, not control over the property. Pawlowski, 322 Wis. 2d 21, ¶26.

16

Thus, our interpretation of the dog bite statute which takes into account where the landowner resides is in keeping with the canon of construction that different words in a statute have different meanings.

¶40 Additional support for our interpretation comes from the canon of construction providing that legislation in derogation of the common law should be strictly construed so as to have minimal effect on the common law rule. Fuchsgruber, 244 Wis. 2d 758, ¶25; NBZ, Inc., 185 Wis. 2d at 836. The dog bite statute is in derogation of the common law. Malone, 217 Wis. 2d at 763; Pattermann, 173 Wis. 2d at 150. Under the common law rule, an owner needed to have notice that a dog was dangerous in order to be held liable for an injury caused by the dog. Smaxwell, 274 Wis. 2d 278, ¶42; Nelson v. Hansen, 10 Wis. 2d 107, 118, 102 N.W.2d 251 (1960). In 1981, the legislature amended Wis. Stat. § 174.02 to impose strict liability on dog owners. § 10, ch. 285, Laws of 1981 ("Liability for injury. (a) Without notice. The owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property.").

¶41 As the strict liability imposed by Wis. Stat. § 174.02 on owners for injuries caused by dogs is in derogation of the common law, the statute should be interpreted narrowly. Malone, 217 Wis. 2d at 763; Pattermann, 173 Wis. 2d at 150. A conclusion that "harboring" requires more than mere ownership of the land on which a dog resides is consistent with a narrow reading of the statute. A contrary interpretation would extend

17

the strict liability in the statute, being in further derogation of the common law rule requiring negligence or fault.

¶42  In sum, the determination of ownership under the dog bite statute is based on the totality of the circumstances.  Our review of the statutes, caselaw, and the canons of statutory construction convinces us that mere ownership of the property on which a dog resides is insufficient to establish that an individual is a harborer.

IV

¶43  Having determined that ownership of the property on which a dog resides is not sufficient to establish that the individual is an owner under the dog bite statute, we turn to the facts of this case.

¶44  First, we consider the degree of control that Kontos had over the Grandview property to determine whether the Veiths were more akin to houseguests or tenants.  There are limited facts to support the conclusion that the Veiths were houseguests.  In essence, they are limited to the fact that there was no formal rental agreement between Kontos and the Veiths, and that Kontos did not expect the Veiths to pay rent due to their financial circumstances.

¶45  On the other hand, multiple facts suggest that the Veiths were more akin to tenants.  Kontos did not live at the property with the Veiths, but maintained a separate residence approximately seven miles away.  The record does not reflect that he prescribed particular rules for the Veiths to follow.  Mr. Veith performed repairs and general maintenance on the

18

property and partially remodeled the interior of the home. Further, although Kontos apparently appeared on the property on multiple occasions, the record reveals that it was not frequent.

¶46 Overall, the record demonstrates that Kontos did not exercise control over the Grandview property. By all indications, Kontos provided the property for his daughter with the intention that she treat it as her home. This was not the situation at issue in Pawlowski where the dog's legal owner lived in the same residence with the property owner in a relationship akin to a houseguest. Rather, the Veiths lived on the Grandview property, maintaining it as if it were their own residence.

¶47 Considering the totality of the circumstances detailed above, we conclude that Kontos was not a statutory owner of the dogs such that he could be held liable under Wis. Stat. § 174.02. It is undisputed that Kontos did not legally own the dogs and did not exercise the requisite care, custody or control of the dogs to qualify as a keeper. Further, he was not a harborer of the dogs. Although Kontos provided shelter for his daughter and family by buying the house for them to live in, he exercised no control over that property and maintained a separate residence. Ultimately, it was his daughter who provided shelter to the dogs.

V

¶48 We conclude that mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02.

19

Rather, the totality of the circumstances determines whether the legal owner of the property has exercised the requisite control over the property to be considered a harborer and thus an owner under the statute.

¶49 We determine that Kontos is not an "owner" under the statute. A statutory owner includes one who "owns, harbors or keeps a dog." Wis. Stat. § 174.001(5). It is undisputed that Kontos did not legally own the dogs and did not "keep" them. Additionally, we conclude that he was not a harborer as evidenced by the totality of the circumstances. He neither lived in the same household as the dogs nor exercised control over the property on which the dogs were kept. Accordingly, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶50 DAVID T. PROSSER, J. *(dissenting)*. On June 21, 2008, Julie Augsburger (Augsburger) visited the home of her longtime friend Janet Veith in rural Winnebago County. Augsburger had visited Janet, her husband Edward, and their daughter Jordan (the Veiths) on other occasions, and she knew that the Veiths kept multiple dogs on the premises. She asked Jordan whether the dogs had been let out of the house into a fenced-in yard because she had to walk through the yard to get to the barn where Janet was working. Jordan told her the dogs were not out.

¶51 When Augsburger entered the fenced-in area, she was suddenly attacked by four dogs. The dogs repeatedly bit her and tore off her pants. She was bitten at least 11 times and suffered serious lacerations on both legs——that is, on her left thigh, left calf, and right calf. Some of these lacerations required "surgical closure." The most serious laceration——on her right calf——measured ten centimeters, resulting in a "6 cm long dented area." Augsburger was given morphine to relieve her pain when she was transported by ambulance to a local hospital, and she was given another opiate at the hospital.

¶52 In due course, Augsburger sued Janet and Edward Veith; Janet's father, George Kontos; and Kontos's insurer, Homestead Mutual Insurance Company, to recover damages. The question in this case is whether George Kontos may be held liable for the full amount of damages caused by the dogs, on grounds that he

1

"harbored" the dogs under Wis. Stat. §§ 174.001(5) and 174.02(1).[1]

¶53 The majority answers this question "no," concluding that he is in no way liable. It reverses a published decision of the court of appeals, which affirmed a ruling of the Winnebago County Circuit Court, Gary R. Sharpe, Judge, that reached the opposite conclusion. Augsburger v. Homestead Mut. Ins. Co., 2013 WI App 106, 350 Wis. 2d 486, 838 N.W.2d 88. Because I believe the majority is misinterpreting and misapplying the applicable statutes, I respectfully dissent.

I

¶54 The statutory law in this case is found in Chapter 174 of the Wisconsin Statutes. Wisconsin Stat.§ 174.02 is entitled "Owner's liability for damage caused by dog." Subsection (1), "Liability for Injury," provides in part:

> (a) Without notice. . . . [T]he owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.
>
> (b) After notice. . . . [T]he owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.

¶55 The term "owner" is defined in Wis. Stat. § 174.001(5): "'Owner' includes any person who owns, harbors or keeps a dog." (Emphasis added.)

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

2

¶56 The quoted statutes were adopted at different times. Wisconsin Stat. § 174.001(5) was part of Section 8m, Chapter 289, Laws of 1979. It became effective on January 1, 1981. Wisconsin Stat. § 174.02(1) was part of Section 10, Chapter 285, Laws of 1981. It became effective on May 1, 1982. Understanding the legislative history of these dog bite statutes is essential to rendering a correct interpretation of the statutes.

¶57 There have been dog bite statutes in Wisconsin since the early 1850s. Section 1620 of the Wisconsin Statutes of 1898 read in part as follows:

> Owner's Liability. The owner or keeper of any dog which shall have injured or caused the injury of any person or property . . . shall be liable to the person so injured . . . without proving notice to the owner or keeper of such dog or knowledge by him that his dog was mischievous or disposed to kill [animals] . . . .

This same language appeared in Wis. Stat. § 174.02 (1923), and the language and substance of this statute remained largely unchanged until Wis. Stat. § 174.02 was repealed and recreated in 1982.

¶58 The above-quoted statute was <u>not</u> a strict liability statute. This was made clear in <u>Chambliss v. Gorelik</u>, 52 Wis. 2d 523, 191 N.W.2d 34 (1971), and in an earlier case, <u>Nelson v. Hansen</u>, 10 Wis. 2d 107, 102 N.W.2d 251 (1960).

¶59 In <u>Chambliss</u>, Justice Nathan Heffernan, writing for a unanimous court, stated:

> At common law the owner or keeper of a dog was not liable for the vicious or mischievous acts of the dog unless he had prior knowledge of the vicious or mischievous propensities of the dog or unless the

3

injury was attributable to the negligence of the owner or keeper. Nelson v. Hansen (1960), 10 Wis. 2d 107, 102 N.W.2d 251. . . .

[I]n Nelson v. Hansen, . . . the court determined that the legislature did not impose or intend to impose strict liability on the keeper of a dog. It was also determined that an action brought under the statute continued to be one for negligence but that the statute eliminated the necessity of proving scienter. In all other respects, the responsibility of an owner or keeper remained the same. As we said in Nelson v. Hansen, . . . page 115, after discussion of early cases: ". . . the statute only applied to injuries from mischievous or vicious acts of a dog for which at common law the owner would not be liable unless he had knowledge or ought to have known of such propensities." . . .

For cases under the statute in which no proof of scienter is required and where there is no evidence of the keeper's negligence . . . there must be proof that the dog was vicious or mischievous. . . .

Thus, under the statute, it continues to be necessary to show that the dog, prior to the act complained about, had vicious and destructive habits. The statute merely eliminates the necessity of proving that the keeper had such knowledge.

Chambliss, 52 Wis. 2d at 528-30 (quoting Nelson, 10 Wis. 2d at 115).

¶60 A flurry of legislative activity in the early 1980s significantly altered the law. First, Wis. Stat. § 174.001(5) provided a definition of "owner" that added the word "harbors," and also used the word "includes" before its reference to "any person who owns, harbors or keeps a dog." These changes extended dog bite liability to a broader group of people.

¶61 Second, the rewritten § 174.02(1) borrowed a provision from a statute that the legislature repealed in 1982——namely, Wis. Stat. § 174.03 (1979)——that provided double damages when a dog known to be dangerous is responsible for a repeat attack on

4

animals; the rewritten statute made double damages available when a repeat attack injures a person.

¶62 Third, the rewritten § 174.02(1) also created strict liability. A strict liability statute imposes liability for a dog bite irrespective of an "owner's" scienter and irrespective of whether the dog had a previous propensity for biting.

¶63 The strict liability point was discussed in Cole v. Hubanks, in which the court said: "Wisconsin Stat. § 174.02 is a 'strict liability' statute wherein the legislature has made the policy choice to place the burden of damage caused by a dog on the dog's owner." Cole v. Hubanks, 2004 WI 74, ¶22, 272 Wis. 2d 539, 681 N.W.2d 147 (citing Becker v. State Farm Mut. Auto. Ins. Co., 141 Wis. 2d 804, 815, 416 N.W.2d 906 (Ct. App. 1987); Fifer v. Dix, 2000 WI App 66, ¶12, 234 Wis. 2d 117, 608 N.W.2d 740).[2]

¶64 The court's statement in Cole was affirmed unanimously in Pawlowski v. American Family Mutual Insurance Co., 2009 WI 105, ¶¶14, 17, 322 Wis. 2d 21, 777 N.W.2d 67, when the court said, "Both a legal owner and a statutory owner of a dog can be simultaneously strictly liable under Wis. Stat. § 174.02. . . . Section 174.02 is a strict liability statute."

¶65 Surprisingly, the majority opinion places little emphasis on the history of the two statutes. In fact, it seeks to compare the present statutes, not to the prior statute in

---

[2] The decision in Becker v. State Farm Mutual Automobile Insurance Co., 141 Wis. 2d 804, 416 N.W.2d 906 (Ct. App. 1987), relied on Meunier v. Ogurek, 140 Wis. 2d 782, 412 N.W.2d 155 (Ct. App. 1987).

5

force from 1898 to 1982, but to Wisconsin common law that has not existed since at least 1871. See § 8, ch. 67, Laws of 1871. The majority relies selectively on a canon of statutory construction (statutes in derogation of the common law), Majority op., ¶40, but it fails to acknowledge that one of the present statutes contains a definition of "owner" that uses the word "includes," which invites a broader interpretation of the statute. See Black's Law Dictionary 766 (7th ed. 1999) ("The participle _including_ typically indicates a partial list . . . ."); see also Hirschhorn v. Auto-Owners Ins. Co., 2012 WI 20, ¶36, 338 Wis. 2d 761, 809 N.W.2d 529 ("When a list of terms follows the word 'includes,' the list is commonly understood to be non-exhaustive.").

¶66 The purpose of the revised dog bite statutes was well stated in Pawlowski, 322 Wis. 2d 21, ¶76:

> The purpose of Wis. Stat. § 174.02 is "to protect those people who are not in a position to control the dog." [quoting Armstrong v. Milwaukee Mut. Ins. Co., 202 Wis. 2d 258, 268, 549 N.W.2d 723 (1996).] Imposing liability . . . furthers the legislative policy embodied in Wis. Stat. § 174.02 of protecting innocent people from injury by dogs, of ensuring that an innocent victim of a dog bite recovers compensation, and of making a person who owns, harbors, or keeps a dog responsible for injuries inflicted by the dog.

¶67 In sum, the statutory history of Wis. Stat. §§ 174.001(5) and 174.02(1) and the clear policy embodied in the statutes are not consistent with the majority's restrictive reading of these statutes.

II

6

¶68 The key word requiring interpretation is "harbors." I agree with much of the majority's discussion of the pertinent case law. I disagree with the majority's failure to apply that law.

¶69 The majority opinion reads in part:

The term "harbor" is not defined in the statute. . . . Wisconsin caselaw, however, has addressed the definition of the term "harbor" and we find guidance from those cases.

A general definition of the term "harborer" is provided in Pattermann v. Pattermann, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992). There, the court defined the term by contrasting it with the term "keeper." It explained "[c]ourts generally define 'keeping' as exercising some measure of care, custody or control over the dog, while 'harboring' is often defined as sheltering or giving refuge to a dog. Thus, 'harboring' apparently lacks the proprietary aspect of 'keeping.'" Id. Further expounding on the meaning of "harboring," the court stated that: "'harboring a dog' means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog." Id. at 151.

Majority op., ¶¶20-21 (emphasis added)(footnote omitted).

¶70 In light of this case law, the question is whether George Kontos harbored the Veiths' dogs; that is, whether he provided lodging or shelter for the Veiths' dogs.

¶71 The circuit court (Judge Sharpe) said:

The definition of harbor is "to give shelter or refuge to" and there is no question that Mr. Kontos gave shelter to Edward and Janet Veith and their dogs. No landlord tenant relationship existed. . . . [T]he Court feels that [Mr. Kontos] had sufficient connection and that the arrangement was based upon family as opposed to a landlord tenant/business relationship. As a result, the Court finds that Mr.

7

<u>Kontos harbored the dogs</u> pursuant to Wis. Stats. § 174.001(5) . . . .

(Emphasis added.)

¶72 In a well-reasoned opinion, the court of appeals affirmed this determination:

Like the homeowner in <u>Pawlowski</u>, Kontos afforded the Veiths' dogs shelter and lodging for many months, some for more than a year, before the incident, and thus he harbored them. Further, his status as a harborer is not undermined by the fact he was not <u>also</u> a keeper exercising custody or control over the dogs.

<u>Augsburger</u>, 350 Wis. 2d 486, ¶12.

¶73 The court added:

Kontos contends in his reply brief that because he personally resided in a different home from the dogs, this case is substantively distinguishable from <u>Pawlowski</u>. We disagree. In both cases, the owner of the homes knowingly afforded lodging and shelter to the dogs, the relevant consideration in deciding a question of "harboring." The fact that Kontos resided in a separate home from the dogs, and therefore was not in a convenient position to and in fact did not exercise custody or control over or care for the dogs, would be most relevant if the issue was whether Kontos was a "keeper." Indeed, had the legislature limited the statutory definition of "owner" to only owners and keepers of dogs, we would have no difficulty holding for Kontos. But the legislature did not so limit the statute. In choosing to include "harbor[ers]" in the definition of owners, the legislature broadened the pool of potentially liable persons beyond just those who own or keep offending dogs.

<u>Id.</u>, ¶13.

¶74 The majority opinion correctly states that the "mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02." Majority op., ¶48. Instead, "the totality of the circumstances determines whether the legal owner of the property has exercised the requisite control over the

8

property to be considered a harborer and thus an owner under the statute." Id.

¶75 This brings us to the totality of the circumstances and raises the question of what control Mr. Kontos did not exercise over "the circumstances."

III

¶76 The facts are not in dispute. In 2007 George Kontos and his wife were living at their home in Butte Des Morts in Winnebago County. Mrs. Kontos was seriously ill. Their daughter, Janet Veith, was living with her husband and daughter in Colorado, under circumstances that permitted the Veiths to maintain horses and dogs on their property.

¶77 Mr. and Mrs. Kontos wanted their daughter to come home to be near her mother. Janet Veith wanted to come. However, the Veiths were in no position financially to give up what they had in Colorado in terms of property and employment to move to Wisconsin. George Kontos made that possible.

¶78 In sum, Mr. Kontos asked that Janet and her family relocate to Wisconsin to be near Mrs. Kontos. Mr. Kontos helped pay for the move. Mr. Kontos purchased a house for the Veiths to live in and he selected a house in a rural area that permitted the Veiths to keep horses and dogs. He continued to own that property. He paid the taxes on the property. And he acquired the only insurance policy on the property.

¶79 The Veiths did not pay rent for the property and were not expected to pay rent. Even if they earned some income, the Veiths were financially subsidized by Mr. Kontos. For example, he made Janet's car payments. When Janet wrote Mr. Kontos a

$2,000 check as partial reimbursement for this assistance, he did not cash it. Why? When Mr. Kontos was asked in a deposition whether it was "accurate to say that as far as [he] knew [the Veiths] just have enough money to get by," he replied "Yes." The deposition continued: "[Question:] Is that yes? [Answer:] That's probably a generous statement."

¶80 As the court of appeals explained, "Kontos was aware the Veiths had two dogs when they moved into the property in February 2007, and he permitted these and additional dogs they acquired a few months later to be kept on the property." Augsburger, 350 Wis. 2d 486, ¶3.

¶81 At the time of the attack in June 2008, there were six dogs on the property. The presence of the dogs was not unknown to Mr. Kontos because he visited the property on multiple occasions and had some interaction with them.[3]

¶82 The majority opinion states: "Kontos would rarely go near the dogs. He never fed the dogs, watered, or bathed them. Further, he did not groom them or take them to the vet. He did not pay for their food, take care of them, or instruct his daughter how to take care of them." Majority op., ¶8.

¶83 Most of these statements are not relevant because they involve "keeping" a dog. Mr. Kontos is not alleged to have "kept" the dogs. Even so, the statements go too far. Although Mr. Kontos may not have gone to the supermarket to buy food for the dogs, his various financial subsidies to the Veiths made it

---

[3] For example, Kontos would sometimes yell at the dogs to be quiet when he was visiting the Veiths.

possible for the Veiths to acquire additional dogs, buy food for the dogs, and get all of the dogs properly licensed.

¶84 Mr. Kontos admittedly did not assert direct control over the dogs but he had complete authority to remove them from the property, as he could have asked the Veiths to leave the property. He did exercise a lot of control over the property——more than simple ownership. For instance, he stored his boat on the property.

¶85 Looking at the totality of the circumstances, it would be hard to contend that Mr. Kontos did not shelter the Veith family. It would be hard to contend that Mr. Kontos did not shelter the Veith horses, inasmuch as he enabled them to move from Colorado and bought property with a barn for horses.

¶86 Why then did he not shelter the dogs? Why was the circuit court clearly erroneous when it found that Mr. Kontos had harbored the dogs? The majority does not provide a satisfactory answer.

IV

¶87 The majority cannot be indifferent to the plight of the victim in this case. It knows that the Veiths, who owned, harbored, and kept six dogs on the property but had no liability insurance——even though there had been a previous dog bite incident involving a woman who kept her horse with the Veiths——are in no position to pay damages to Julie Augsburger. Thus, it must be acting in the belief that it is serving some higher purpose when it denies recovery.

¶88 The first purpose, apparently, is to protect landlords from liability for the torts of their tenants.

11

¶89 The majority concludes that "mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02." Majority op., ¶¶3, 48. This principle is unassailable. It is supported by our decisions in Gonzales v. Wilkinson, 68 Wis. 2d 154, 158, 227 N.W.2d 907 (1975), and Smaxwell v. Bayard, 2004 WI 101, ¶¶46-54, 274 Wis. 2d 278, 682 N.W.2d 923. The holdings in these cases are not in jeopardy.

¶90 Nonetheless, the majority is unwilling to acknowledge the pervasive and unusual influence that Mr. Kontos had over the Veith family's circumstances. The "mere ownership" of the property is but one of the circumstances present in this case; it is the totality of all the circumstances that demonstrates that Kontos harbored the dogs that mauled Julie Augsburger.

¶91 The circuit court stated unequivocally that "No landlord tenant relationship existed" between Mr. Kontos and the Veiths. Yet the majority seeks to keep this issue alive, saying: "We need not determine whether there was a landlord-tenant relationship in this case." Majority op., ¶30.

¶92 In truth, this case is not about landlord liability for dog bites. This case is about a harborer's liability for dog bites. The majority's concern about landlords on these facts is not well founded.

¶93 A second purpose is to demonstrate the court's respect for the American Law Institute's Restatements of the Law. The majority notes that "[t]he Restatement . . . emphasizes the importance of considering whether the landowner is residing on the premises with the dog," and that "[t]he fact scenario in

12

this case . . . matches an example provided in the Restatement (Second) of Torts § 514." Majority op., ¶¶ 32-33. This example states:

> Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept.

Restatement (Second) of Torts § 514 cmt. a (1977).

¶94 The majority's focus on the Restatement (Second) of Torts is misguided. Section 514 concerns "Wild Animals or Abnormally Dangerous Domestic Animals." The example from § 514 dates back at least to 1938 and the Restatement (First) of Torts, in which it also appears. See Restatement (First) of Torts § 514 cmt. a (1938). That section, too, dealt with "Wild Animals or Abnormally Dangerous Domestic Animals."

¶95 The Restatement considers dogs, however, to be domestic animals that are not abnormally dangerous. Restatement (Second) of Torts § 509 cmt. f (1977).[4] Indeed, neither Restatement scheme imposes strict liability on owners or harborers of dogs. Under the Restatement:

---

[4] Restatement (Second) of Torts § 509 cmt. f (1977) states:

Although dogs, even hunting dogs, have no material utility comparable to cattle, horses and other livestock, they have from time immemorial been regarded as the friends and companions of man. The great majority of dogs are harmless, and the possession of characteristics dangerous to mankind or to livestock is properly regarded as abnormal to them. Consequently the possessor of a dog is not liable for its biting a person or worrying or killing livestock unless he has reason to know that it is likely to do so.

13

one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

    (a) he intentionally causes the animal to do the harm, or

    (b) he is negligent in failing to prevent the harm.

Restatement (Second) of Torts § 518 (1977).

¶96 The treatment of dog bite liability under the Restatement differs from the treatment of dog bite liability under the Wisconsin statute even <u>before</u> the 1982 shift to strict liability. Our statute provided for liability of owners of vicious or mischievous dogs even if the owner lacked scienter as to the dog's nature and did not act intentionally or negligently. <u>See</u> <u>Chambliss</u>, 52 Wis. 2d at 530. The Restatement, on the other hand, requires negligence or intent in the absence of scienter. Needless to say, the Restatement scheme differs greatly from the strict liability scheme currently in place.

¶97 Affirming the circuit court's determination that Kontos harbored the dogs under the totality of these circumstances would not offend the Restatement——the Restatement has no relation to Wisconsin's dog bite statute. Our definition of "harbor" in a strict liability statute passed in 1982 should not be guided by a comment on a negligence scheme from 1938.

V

¶98 In conclusion, the majority misses the mark in its application of the law to the facts. Only by ignoring the clear purpose of Wisconsin's strict liability dog bite statute and

looking instead to outmoded authority and a canon of construction contradicted by the statute itself, does the majority arrive at its conclusion that Kontos did not "harbor" the Veiths' dogs. Yet this result forecloses any realistic possibility that Julie Augsburger will recover damages for her medical expenses, as well as her scars and her pain and suffering. This outcome contradicts the language, design, and purpose of the statute, and unfairly victimizes Augsburger a second time.

¶99 For the foregoing reasons, I respectfully dissent.